### SAM COLE v. THE STATE.

#### No. 3007. Decided June 21, 1905.

**1.—Murder in Second Degree—Evidence—Blood Found—Wounds of Deceased.**

On a trial for murder where the testimony was pertinent to certain issues in the case, there was no error in admitting evidence of blood found near the place of the homicide and character of wounds on deceased's body.

**2.—Same—Evidence—Declaration of Third Party.**

In a prosecution for murder there was no error in excluding testimony of declarations by deceased's wife to the witness with reference to threats made by the deceased against the defendant. Of course, it would have been competent as original evidence to have shown by the testimony of said wife, any threats made by her husband against the defendant, or to have shown this upon cross-examination of said wife.

**3.—Same—Evidence—Unconnected Incident.**

On a trial for murder while it was not relevant to any issue in the case to show that defendant visited the house of the State's witness and on one occasion went with her daughters to church, he being a married man, and separated from his wife on account of the action of her father, etc., but there being no special injury on account of such testimony to defendant's right, it was harmless error.

**4.—Same—Evidence—Condition of Defendant's Mind—Self-Serving Testimony.**

On a trial for murder it was competent for defendant to have shown what he told others about his family trouble, and the acts of deceased in endeavoring to keep defendant's wife from living with defendant, and particularly what oc-

curred between defendant and witness some time prior to the homicide with reference to suing out a writ of habeas corpus in order to secure the custody of his wife or to take her away from her father's house; the State's case tending to show that deceased was kindly disposed toward the family and had no desire to separate defendant's wife from him.

### 5.—Same—Evidence—Self-Defense—Dangerous Character of Deceased.

On a trial for murder where defendant relied on self-defense because of an attack on the part of deceased on him at the time of the homicide, and his apprehension of danger in that connection, the defendant under such circumstances ,had the right to introduce in evidence any fact which tended to prove the good faith of his belief that he was in danger, and to prove some special act or communication by deceased to him which indicated his dangerous character, such as that deceased would have killed the tax assessor if he had indicted him, etc.    However, it was not competent to show that deceased made a statement to defendant of his troubles generally with the officer, etc., without saying what these troubles were.

### 6.—Same—Letters—Evidence—Animus.

On a trial for murder it was competent for defendant to introduce letters from defendant to his wife before the homicide while the latter was at her father's house, to show his affections towards his wife, his dissatisfaction at her living with her father, and his desire to have her come and live with him, and to show his idea that his father-in-law did not want his daughter (appellant's wife) to leave his roof; and this whether said letters were written in response to his wife's letters or not.

### 7.—Same—Irrelevant Testimony—Defendant's Study of Law.

On a trial for murder it was not proper to permit the State to prove that defendant during his confinement in jail was engaged in studying law; the State's counsel using this testimony to show that defendant pursued such study of law to enable him to fabricate a defense to the prosecution.    Such testimony was irrevelant and calculated to injure the defendant.

### 8.—Same—Opinion of Witness—Evidence—Physical Condition of Deceased.

On a trial for murder it was error to permit the State to introduce evidence regarding the physical condition of deceased shortly before the homicide, where it did not appear that defendant had any knowledge of such condition or how such condition affected deceased.

### 9.—Same—Evidence—Husband and Wife—Confidential Communication.

On a trial for murder there was no error in allowing the wife of the defendant to testify that he immediately on shooting deceased exclaimed, "I told you I would do it!" and immediately thereafter again made the same declaration. Such declaration being a part of the res gestæ, and not the confidential communication between husband and wife.    Following Cook v. State, 22 Texas Crim. App., 511; Kenny v. State, 9 Texas Ct. Rep., 888.

### 10.—Same—Evidence—Confidential    Communications—Letters—Husband    and Wife.

On a trial for murder it was inadmissible to introduce the contents of a letter written by the deceased to his daughter when she was living with her husband some year or more before the homicide, conveying expressions of good will and esteem on the part of deceased towards his son-in-law, said letter having then been handed to defendant by his wife and read by him.    Such letter was within the rule of a confidential communication between husband and wife.

### 11.—Same—Evidence—Divorce Suit.

On trial for murder, testimony of the refusal of defendant's wife to answer questions in the divorce proceedings by her husband, until she should see her lawyer, was inadmissible, as was also the certificate of officers to that effect.

### 12.—Same—Evidence—Declaration of Third Party—Hearsay.

On a trial for murder it was error to permit a State's witness to testify as to the declarations of defendant's wife concerning threats and abuse by him

of her in the absence of defendant; and this although such testimony was brought out in cross-examination by defendant's counsel who promptly objected to such testimony at the time.

### 13.—Same—Charge of Court—Manslaughter—Grouping Provocations.

On a trial for murder where the court instructed the jury that the provocation must arise at the time, but that they could look to all the facts and circumstances in evidence in order to intensify and make out the provocations at the time, it was not necessary that the court should have grouped all the various instances of provocation.

### 14.—Same—Manslaughter—Charge of Court.

See opinion for charge of court on manslaughter, which, while susceptible to the exception of want of clearness in presenting defendant's rights to take and hold possession of his wife and child against the interference of his father-in-law, and whereby defendant's mind was rendered incapable of cool reflection, etc., was cured in a subsequent portion of the court's charge in which he fairly presented the law applicable to the facts.

### 15.—Same—Self-Defense—Defendant's Right to the Custody of His Wife and Child.

On a trial for murder the court's charge announced a correct principle in this, that the defendant had a right to the custody of his wife and child, she consenting to go with him, and that deceased had no right to interfere from preventing them from so doing, and that if he alone, or in conjunction with another, did interfere, defendant had the right to resist such interference, etc., and if in the struggle which ensued defendant's life was in danger, etc., then he had a right to slay deceased.

Appeal from the District Court of Brown. Tried below before Hon. John W. Goodwin.

Appeal from a conviction of murder in the second degree; penalty, six years imprisonment in the penitentiary.

The opinion states the case. See Cole v. State. 45 Texas Crim. Rep., 225.

*I. J. Rice, Wilkerson & Lee, Woodward & Baker,* for appellant.—The State introduced the appellant's wife as a witness against him over his objection, and she testified that she was present at the time of the killing, and was in her father's buggy, and she saw her parents drive up and her mother asked: "Why children, what in the world, where are you going?" And she replied to the Cove, and when she said the Cove, Sam Cole wheeled his horses and dropped the lines and grabbed the gun and as he did so, she grabbed at it too, and began screaming saying, "O poppy run here quick! Come quick, quick * * *" that appellant drew the gun from under the seat of the buggy, and she was trying to get hold of it, he jerked it away from her, and shot her father, and when as he shot him said: "There now, I told you I would do it, I told you I would do it." Then the horses ran off, and he circled them back where her father fell and where she and her mother were and said: "I told you I would do it, I told you I would do it." On redirect examination by the State the witness identified a letter shown her by the State, as being a letter written by her father from Coleman, Texas, to her and received by her while she and defendant lived at Big Springs, and testified further

"Sam Cole read that letter." On cross she testified: "I handed the letter to Sam Cole to read. I showed it to him." On redirect she identified another letter she received from her father dated August 25th, 1901, and at the same place with the following statement: "I received that letter while at Big Springs, and I know Sam Cole read it." The State then introduced the letter or a portion of same as follows: "I do sincerely hope you may get along ever so well, have your full share of pleasure while your dear young life is yet passing and may many successes and few reverses encounter Sam while on his road struggling for an honest living and future gain." Addressed to Mrs. Lydia Cole and signed C. C. Hudson. At the time this testimony was offered the appellant then and there objected, as shown by his bill of exceptions. White's Ann. Texas Code Crim. Proc., arts. 774 and 775; Davis v. State, 8 Texas Ct. Rep., 766; Brock v. State, 6 Texas Ct. Rep., 319; Bassett v. U. S., 34 U. S., 763 (L. C. P. Co. ed.); Stone v. Bowman, 13 Peters, 209; Roscoe's Crim. Evidence (8th ed.), sec. 125.

On question of defendant's statement to third parties of his family troubles, etc.: Dodson v. State, 70 S. W. Rep., 969. On question of permitting testimony that defendant was studying law, etc.: Jones v. State, 38 Texas Crim. Rep., 87. On question of hearsay evidence: Burke v. State, 15 Texas Crim. Rep., 156. On question of excluding defendant's letters: Cole v. State, 8 Texas Ct. Rep., 141; Dodson v. State, 70 S. W. Rep., 969. On question of charge on manslaughter: Swain v. State, 12 Texas Ct. Rep., 812; Cole v. State, 8 Texas Ct. Rep., 141.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment fixed at six years confinement in the penitentiary. This case came before us on a former appeal and was reversed. See 8 Texas Ct. Rep., 141. The facts are fully stated in that opinion, and those presented in this record are substantially the same, and we accordingly refer to that opinion for the facts.

Appellant objected to the evidence offered by the State of blood found on the ground near where the homicide was committed, and further that the court improperly admitted evidence of the wounds on deceased's body; that there were two holes; and the evidence of another witness that the wound was a large one, that he could stick his two fingers into the hole. Under the explanation given by the court, to the effect that this testimony was pertinent to certain issues in the case, it occurs to us there was no error in its admission.

Nor do we think the exceptions taken by appellant to the remarks of the district attorney or counsel for the State, as presented in bills numbers 3 and 5 show any error.

Bill number 8 is an exception taken to the action of the court refusing to permit Mrs. Lewis and Mrs. Thompson to state what Mrs. Hud-

son (wife of deceased) told them at the house of Mrs. Lewis, sometime before the homicide to wit: "That she did not know whether defendant's wife was going to stay with her; that Sam Cole had written for her to come to him, and she cried and wanted to go, and I consented. I must consent to let her go. But Mr. Hudson says before he shall take her he would kill him." The court explains that all of this testimony was admitted, except the last portion thereof to wit: the threat of Mr. Hudson. Of course, it would have been competent for the defendant to have proven by original testimony, by Mrs. Hudson herself, that deceased had threatened appellant; but this could not be proven by hearsay testimony, such as that offered. Possibly, if Mrs. Hudson had been placed on the stand by the State, and she had been asked about this threat and had denied it, she might have been contradicted on this subject by the defendant. But such is not the attitude of the question as shown in the bill of exceptions.

We do not think it was relevant to any issue in this case for the State to have proven, as was done, that Mrs. Lewis had two daughters, one married, and that she had left her husband; and one unmarried; and that defendant visited her house sometimes, and on one occasion went with her daughters to church. While this does not appear to have been material to any issue in the case, we fail to see any special injury on account of its introduction to appellant.

We believe it was competent, as shown by bills 11 and 12 and 13, and some other bills, for appellant to have shown what he told others about his family trouble, and the acts of deceased in endeavoring to keep his wife from living with him. We believe it was particularly pertinent in this connection to have shown by the witness Baker what occurred between appellant and himself sometime prior to the homicide with reference to getting a writ of habeas corpus in order to secure the custody of his wife or to take her away from her father's house. All this testimony was objected to on the ground that it was self-serving. It does not occur to us that it was made to serve any purpose appellant then had in view. Certainly not with reference to the slaying of deceased and fabrication of testimony against such event. On the contrary it shows, as we take it, an earnest effort on the part of appellant to get his wife away from the control of her father; and it shows a belief on his part that her father was endeavoring to separate them; and it shows in this respect, the condition of appellant's mind at the time, which has an important bearing on the case as made by the State against him. The State's case tends to show that deceased was kindly disposed toward appellant, and he had no desire to separate appellant's wife from him. Poole v. State, 8 Ct. Rep., 420.

Appellant insists that the court committed an error in rejecting evidence on the part of appellant to the effect that sometime before the homicide, he went to the town of Coleman with his father-in-law, and that his father-in-law's mission was to ascertain if he had been

indicted for improperly rendering his taxes; that his father-in-law on their return home stated that the tax assessor had not indicted him; that if he had indicted him, he would have killed him, or words to that effect. Appellant relied on self-defense, because of an attack on the part of deceased at the time of the homicide, and his apprehension of danger in that connection. The doctrine seems to be that under such circumstances appellant has the right to have in evidence any fact which tends to prove the bona fides of his belief, that he was in danger. In that respect he can rely on proof of the desperate character of his adversary, or on proof of some special act or communication by deceased to him, which indicates his dangerous character. Childers v. State, 30 Texas Crim. App., 193; Dodson v. State, 70 S. W. Rep., 969. However, we do not believe it was competent to show that deceased could have told appellant on one occasion that he had run away from East Texas, and that he had a great deal of trouble with officers, and it cost him a good deal to get out of it, as it is not shown what this trouble was.

It occurs to us that the two letters offered by appellant in evidence, written by him from San Angelo to his wife, who was then at her father's, in April, 1902, were admissible in evidence. On the former appeal we held that the letters of appellant's wife written about the same time to him were admissible as showing their domestic relations; that they were affectionately inclined to each other. This was in rebuttal of the State's case, that the relations were not friendly; that appellant was unkind to his wife. Now, it occurs to us that if his wife's letters were admissible, by a stronger reason his own letters were admissible. They serve to show directly his affection towards his wife, his dissatisfaction at her living with her father, and his desire to have her come and live with him; and in this connection his idea that his father-in-law did not want him about him, and did not want his daughter (appellant's wife) to leave his roof. We note the court explains that these letters offered do not seem to be in response to any letters of his wife to him. It does not occur to us that their admission would depend upon their being responsive, unless it could be said that his wife's letters having been introduced, and his in response thereto being a part of the same transaction, should also be admitted on that account. We believe they were admissible on another principle: that they were not self-serving; that they were in rebuttal of the State's case on an important feature thereof, and served to show defendant's state of mind with reference to his wife and his father-in-law at that time.

Nor do we think it was proper as was done to permit the State to prove that appellant during his confinement in jail was engaged in studying law. Not that the study of law should at any time be the subject of censure, but the peculiar use which the State made of this fact before the jury was calculated to injure him. It must be admitted that among certain classes there is an antipathy to lawyers,

whether this is well or ill founded is not the question. But this is not the serious matter complained of here. It is that counsel used this testimony to show that appellant was engaged in the study of law in order to enable him to fabricate a defense to the prosecution. The testimony was not relevant or pertinent to any issue in the case, and the use of it was calculated to injure appellant.

On the former appeal we held that the testimony of a certain witness regarding the physical condition of deceased shortly before the homicide was inadmissible. It appears that on this trial some of this same testimony to wit: that of Mrs. Hanks, was admitted, to the effect, "that C. C. Hudson looked very feeble; 'I saw his side. There was a sink in his side.' (This was a few weeks before the homicide.)" The testimony was objected to on the ground that said witness was a non-expert, and her testimony was a mere opinion, except as to the sink in his side; and that the same was made in the absence of appellant, and he was not shown to have had any knowledge thereof. The court, however, explains this by stating: "That defendant offered evidence tending to show that deceased was a man of fine physical power, and this evidence was admitted in rebuttal of this—there being evidence that deceased received an injury a few weeks before he was killed, and that defendant knew it." If defendant knew that the sink in deceased's side was caused by the injury said to have been received, and knew of that injury, then the explanation of the court might have rendered the same admissible. We believe that this testimony should have been rejected. Of course, it was competent to prove in rebuttal of the defendant's evidence, that the deceased had been sick or had been injured recently, and was still feeble, suffering from such recent illness, if this matter was reasonably within the knowledge of appellant, and it occurs to us that it was, though as stated it does not appear that appellant had any knowledge there was a hole or sink in deceased's side. Nor are we informed how this affected deceased.

Appellant strenuously urges that the court committed error in allowing the wife of appellant to testify against him, to the effect that appellant immediately on shooting deceased, exclaimed, "I told you I would do it!" and further that immediately thereafter he drove the buggy a little piece, and hurriedly returned, and again made the same declaration. It was shown in this connection that since the homicide, appellant's wife had procured a divorce from him; but it is claimed by appellant that notwithstanding this divorce, the testimony here complained of was a confidential communication between husband and wife, and that under our statute her lips were forever closed against testifying thereto. In support of this proposition we are cited to Brock v. State, 6 Texas Ct. Rep., 319; Davis v. State, 8 Texas Ct. Rep., 766. It does not occur to us that either of these cases apply to the question here presented. Brock's case merely held that a wife could not testify against her husband, although no objec-

tion was made and no bill of exceptions taken to her testifying. In Davis' case, it appears there was a confidential communication introduced through the wife after her divorce from her husband. Article 774 provides that neither the husband nor wife shall in any case testify as to communications made by one to the other while married, nor shall they after the marriage relation ceases be made witnesses as to any such communication made while the marriage relation subsisted, except in a case where one or the other is prosecuted for an offense, and the declaration or communication made by the wife to the husband or by the husband to the wife goes to extenuate or justify the offense for which either is on trial. So the question here, is, was the declaration of appellant a confidential communication between husband and wife? We hold not. It was unquestionably a part of the res gestæ. It was an exclamation of the husband immediately on firing the shot which killed deceased, made in the presence of both his wife and his wife's mother. It was the transaction voicing itself in the presence of his wife and another, and not a confidential communication. We hold that it was admissible. See Kenney v. State, 9 Texas Ct. Rep., 888, and authorities were cited, especially Cooke v. State, 22 Texas Crim. App., 511.

In this same connection, the State was permitted to introduce the contents of a letter written by deceased to his daughter, when she was living with her husband at Big Springs, some year or more before the homicide. There are some expressions of good will and esteem on the part of deceased toward his son-in-law, and appellant objected to these expressions of good will on the ground that they were confidential communications, because the letter in question was received by appellant's wife, and the same was handed to appellant, who read it. It occurs to us that this letter was within the rule of confidential communications; but for the fact that appellant was the husband of deceased's daughter, he would not likely have been permitted to read the letter in question. We can see no difference between this, than if deceased had told his daughter of his regard and esteem for her husband, and she had been allowed to testify that she had told her husband of these expressions of deceased, during their marriage. We believe that this testimony was inadmissible.

It does not occur to us that the refusal of appellant's wife to answer questions in the divorce proceedings by her husband, until she should see her lawyer, were admissible in evidence, much less that the certificates of officers to that effect were admissible.

The testimony of Mrs. Hanks to the effect that on one occasion prior to the homicide, appellant and his wife were at Mrs. Hanks' house and that they had a little quarrel at the breakfast table. Afterwards appellant went to the lot, and his wife followed him there, and afterwards came back crying as if her heart would break, and said that Sam had told her to go to the house, "God damn your soul to hell." That she did not hear Sam say this, but his wife told her. It seems

that this testimony was admitted without objection, or rather it was adduced by appellant. It appears in this connection that he had endeavored to elicit what occurred at that time, and Mrs. Hanks refused to answer the direct question, and said she would have to explain it. As soon as this witness made the statement as to what Mrs. Cole told her on her return from the lot, appellant made a motion to strike it out. The State objected on the ground that appellant had drawn it out and ought not to be allowed to withdraw it. The defendant's attorney abandoned the objection at that time, and let it go; but later in the trial he renewed his motion to expunge said testimony from before the jury, which the court refused to do. In this we think the court was in error. Burke v. State, 15 Texas Crim. App., 156.

Appellant questions the court's charge on manslaughter, contending that the court should have grouped all the various instances of provocation, which he claims were committed against him by the deceased, and have instructed the jury in effect that this constituted adequate cause. We do not agree with this contention. The court told the jury that the provocation must arise at the time, but they could look to all the facts and circumstances in evidence in order to intensify and make out the provocation at the time. This we think was sufficient.

The court also instructed the jury that, if appellant killed deceased to prevent him taking his wife and child from him, but not in defense of himself from an attack by deceased, in connection with his effort to take possession of appellant's wife and child, that appellant's mind was thereby excited and he was rendered incapable of cool reflection, and on that account he slew deceased, it would be manslaughter. It is contended that this charge unduly limits the right of appellant, in regard to maintaining his custody of his wife and child, inasmuch as it instructs the jury that he would have the right to resist such interference or restraint on the part of deceased by such means as reasonably appeared necessary to resist such restraint, but he could use no greater force than reasonably appeared to him necessary to resist such restraint. It must be admitted that this charge is not very clear, and is susceptible of the construction placed on it by appellant. The court should have told the jury in plain language that appellant had the right to the custody of his wife and child, she consenting to go with him, and that deceased had no right to interfere with this custody, and that if deceased did interfere or attempted to gain possession of appellant's wife and child, appellant had the right to resist such attempt and to use all force necessary to overcome such interference and protect his own possession; and if he was using only such force as was reasonably necessary for that purpose, and his mind became excited because of the deceased's interference to get possession of his wife and child, and he was rendered incapable of cool reflection, and he slew deceased not in his necessary or apparently necessary

self-defense, then his offense would be no more than manslaughter. The same vice above pointed out enters into a subsequent charge, which is complained of. For instance, the court instructs the jury that the resistance which appellant would have the right to make must be proportionate to the injury about to be inflicted. It must only be such as is necessary to repel the aggression, and the use of any greater force would be illegal. We understand the law to be that he cannot only repel the aggression, but he can overcome the aggression by the use of any force that is reasonably necessary for that purpose so as to maintain and secure the custody of his wife and child, and prevent deceased from gaining such custody. However, a subsequent portion of the charge does seem to express the idea intended to be conveyed by what has been said; that is, the court fairly presented this matter to the jury, as follows: "Now, if from the evidence in this case, you believe that defendant Sam Cole, shot and killed C. C. Hudson, but believe that at the time he did so, if he did so, C. C. Hudson, either alone or acting with his wife, was restraining or at the time was endeavoring to restrain Lydia Cole from voluntarily leaving the home of said Hudson with defendant, or if from the evidence you believe that it reasonably appeared to defendant at the time, from the acts and conduct of said C. C. Hudson, or said Hudson and his wife, or from the acts and statements, if any, of said Hudson or said Hudson and wife, that said Hudson was restraining or was at the time attempting to restrain Lydia Cole from voluntarily leaving the home of said Hudson with defendant, then you are instructed that defendant would have been justified in using a degree of force sufficient to overcome such restraint, but no greater."

We also believe that the charge on self-defense which follows this, was in accord with the law; that is, we understand said charge to announce a correct principle in this, that appellant had a right to the custody of his wife and child, she consenting to go with him, and that deceased had no right to interfere to prevent her from so doing, and that if he alone, or in conjunction with his wife, did interfere, appellant had the right to resist such interference and to oppose force with force in order to protect his custody of his wife and child, and if in the struggle which ensued appellant's life was in danger, or his person in danger of serious bodily injury from an attack made or about to be made on him by deceased, or deceased in conjunction with his wife, then he had a right to slay deceased. We understand the charge above referred to embraces this principle.

We do not deem it necessary to discuss the charge further; nor any of the requested special instructions. For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*