## SAM COLE v. THE STATE.

### No. 3858. Decided February 27, 1907.

**1.—Manslaughter—Declarations of Deceased—Part of Conversation.**

Where upon trial for murder the postmaster testified as a witness for the State, as to certain letters of defendant to his wife which came to the postoffice, and that he refused to let deceased have them, and then had a conversation with deceased about the relations between defendant and his wife, who was deceased's daughter, and defendant objected to that portion of the conversation relating to the conduct and treatment of his wife, but did not do so until it was all in. Held, that a part of said conversation being admitted the remainder of it was admissible.

**2.—Same—Remarks of Judge—Comment of Court.**

Where upon trial for murder a State's witness was placed on the stand who had not been previously used as a witness during different trials, and the court remarked in addition to State's counsel, while defendant's counsel was cross-examining witness, that it made no difference whether the witness had been on the stand or not, and that upon objection of defendant's counsel to said remark, withdrew it from the jury, there was no error.

**3.—Bill of Exceptions—Immaterial Testimony—Witness.**

Where upon trial for murder defendant objected to the testimony of a witness with reference to another witness, whom he stated had been present at each of the other trials, and who was present with the testifying witness and saw the shirt of the deceased, the jury could not legitimately deduce from the fact of said witness being present at former trials and conclude that he had been placed on the witness stand and testified to said facts; and where the bill did not show such inferences, there was no error.

**4.—Same—Husband and Wife—Divorce—Confidential Communications—Statutes Construed—Previous Abuse.**

Upon trial for murder, there was no error in admitting in evidence, through the wife since divorced, a conversation of defendant and his wife in the presence of her father; such communication was not inhibited under article 774, Code of Criminal Procedure; and this, although said conversation partly consisted of a statement of the wife detailing a previous abuse by the husband of herself.

**5.—Same—Declaration of Defendant—Self-Serving.**

On trial for murder there was no error in excluding certain declarations of defendant as to what his wife had told him she had heard deceased say, and that that was the reason he did not go to deceased's house some time before the homicide.

**6.—Same—Rebuttal—Harmless Error—Bill of Exceptions.**

Where upon trial for murder testimony that the mother of defendant's wife had purchased and paid for merchandise for said wife, was offered in rebuttal of defendant's testimony that said mother was attempting a separation between said husband and wife; and the bill of exceptions did not show that the defendant did not know of said purchase, the same was harmless error.

**7.—Same—Physical Condition of Deceased—Non-Expert.**

Upon trial for murder there was no error in permitting a State's witness to testify that he was at deceased's house shortly before the homicide and that from deceased's appearance he looked weak and out of health, etc.

**8.—Same—General Reputation of Deceased.**

Upon trial for murder, there was no error in excluding testimony of defendant's witness that some months before the homicide he saw deceased some seven or eight miles from his residence with a pistol on his person.

**9.—Same—State has no Right of Appeal.**

Upon a trial for murder bill of exceptions reserved by the State could not be considered, the State having no right of appeal.

**10.—Same—Father's Right Over Child—Self-Defense.**

Where upon motion for new trial defendant insisted that the court erred in limiting his right of self-defense and in not instructing the jury with reference to his right of possession of his child against the interference of deceased and his wife, and such matter was pertinently presented in the court's main charge there was no error.

Appeal from the District Court of Comanche. Tried below before the Hon. N. R. Lindsey.

Appeal from a conviction of manslaughter; penalty, four years imprisonment in the penitentiary.

The court's charge among other things instructed the jury: "You are further instructed that in such event the defendant Sam Cole would have the right to take his wife and child away from said Hudson's house and would have the same right to resist such interference with said Lydia Cole as she would have had, and to use the same degree of force that she could have used, that is to say, such degree of force, and no more as reasonably appeared to him to be necessary in order to resist and overcome such restraint.

The court had just instructed the jury that said Lydia Cole had the right to leave her father's home and that her father had no right to prevent her doing so, etc.

The court also instructed the jury that if deceased was attempting to prevent the wife of defendant or the defendant's wife and child from leaving his, deceased's place, and that it reasonably appeared to the defendant to be necessary for him to kill the deceased in order for him to relieve his wife or his wife and child from such restraints, and simply for the purpose and not in defense of himself, etc., he shot and killed deceased, to find him guilty of manslaughter; or if they believed from the evidence that the deceased was so attempting to restrain defendant's wife or his wife and her child from leaving the premises, etc., which rendered defendant incapable of cool reflection, to find him guilty of manslaughter.

The court also instructed separately on self-defense against an attack of deceased and apprehended attack, or reasonable appearances of danger from defendant's standpoint.

The court also instructed the jury that if the defendant was in the act of taking his wife and child away from the home of deceased, and that while engaged in such act the deceased acting alone or with his wife, for the purpose of preventing the defendant from taking his wife and child away, made an attack upon the defendant or was about to make an attack upon him, which from the manner and character of it, and the relative strength of the parties and the defendant's knowledge of the character and disposition of the deceased and all the evidence in the case, caused him to have a reasonable expectation or fear of death or fear of bodily injury, and that acting under such

reasonable expectation of fear, the defendant killed the deceased, to acquit the defendant.

*Woodward & Baker, Goodson & Goodson,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at four years confinement in the penitentiary.

This is the third appeal of this case. The former appeals may be found in 8 Texas Ct. Rep., 141, and 13 Texas Ct. Rep., 730. We refer to the former opinions for statement of facts in the case.

Bill of exceptions number 1 shows that defendant placed James Gipson upon the stand, who was the postmaster at Coleman, Texas, who testified that he had been postmaster about twelve years; that he was postmaster at the time the defendant and his wife were living together as such; that he had a conversation with C. C. Hudson, the deceased, with reference to the delivery of mail to Mrs. Lydia Cole, appellant's wife. Deceased told the postmaster to hold Mrs. Cole's mail and deliver the same to him, deceased. "I told deceased I could not do it, and he replied that Mrs. Cole, who was deceased's daughter, was under age, and that he had a right to do that. I told him that I knew that but that he had recognized her as a married lady and had up to that time and that I couldn't retain her mail." The witness was asked where was the defendant at that time, and he replied that he was at Sterling. "Q. Was it the letters that would come from Sam that he wanted you to keep and not deliver to Lydia but to him? A. Yes, sir. Q. And you told him you couldn't do it? A. Yes, sir." Thereupon, the State cross-examined the witness. "Q. In that conversation, did he tell you about what he had done for Sam? A. Yes, sir, I guess we talked for may be half an hour about it, and he said it just looked like they couldn't or wouldn't get along together, and he seemed to be worried over it and then in the conversation he said if they would get together and live right that he would still be ready to help them again. Q. Did he say he would much rather they would get along? A. Yes, sir; he said he would help them if they would get along but it seemed like they couldn't, or wouldn't get along together. Q. Did he say in that conversation that every father wanted to see his children do well and that he wanted to see Lydia and Sam do well? A. Yes, sir. Deceased and I were old time friends." On re-direct examination defendant's counsel proved by the witness that deceased never told him about his children getting along well together until after the witness told him it would be a violation of the law to deliver the letters to him.

On re-cross examination the witness was asked: "And when you told him it was a violation of the law to hold them out he told you if it was a violation of the law he didn't want you to do it? A. Yes, sir; he told me that."

At the time of said direct and cross-examination no objection to any part of said testimony was made by the defendant, but thereafter and while the trial was still progressing and before the conclusion of the taking of the evidence in the case, the defendant moved the court to strike out and exclude all that part of the testimony of James Gipson drawn out on such cross-examination in which he was asked and stated what C. C. Hudson told him as to what he had done for Sam Cole, defendant, and as to his helping them to get along, and as to his statements that they couldn't or wouldn't get along and his statement that every father wanted to see his children do well The objection to all this was that the same was hearsay and inadmissible, and were the acts and declarations of the deceased not in the presence of the defendant, and not any part of the facts or statements drawn out by the defendant on direct examination, and was not necessary to explain anything drawn out by the defendant, and the defendant had only proved by said Gipson that deceased had requested him to deliver the mail that Lydia Cole would receive from Sam Cole, appellant, to him instead of Lydia Cole, and one of the issues in the case being the character of the conduct and treatment of the defendant by deceased during the time, that all of said testimony was prejudicial to the defendant. The court overruled the motion to strike the testimony out. Where a part of a conversation is introduced by one party, the remainder of said conversation about the same matter explanatory of or that throws light upon the motive and animus of the first part of the conversation, is admissible. The testimony here detailed appears to come within this rule of law.

Bill of exceptions number 2 shows that the State placed F. F. Barton upon the stand, who testified that he was at the house of deceased about eight o'clock at night on the evening he (deceased) was killed, and the next morning saw the shirt that deceased had on when killed, and that there were two holes in the shirt pretty close together not more than an eighth of an inch between the holes, just a few threads between them, and each of the holes approximately between the size of a half dolalr and a dollar; whereupon the defendant asked the witness on cross-examination how often he had been in attendance at the different trials of this case, and if the attorneys for the State knew each time that he was in attendance and if he had ever been placed on the stand to testify in the case, to which the witness Barton answered, that this was the fifth time he had been in attendance, which fact was known to the State's counsel; that he had never been placed on the stand to testify before; whereupon the State's counsel arose and said to the court in the presence and hearing of the jury: "that it made no difference whether the witness Barton had ever been put on the stand or not" and the court in response thereto in the presence and hearing of the jury stated: "No, it makes no difference whether he has been on the stand or not," to which statement by the attorney and comment of the court appellant objected on the

ground that same was prejudicial to the defendant and beyond the province of the court; thereupon the court stated to the jury that the remark made by the court was made to counsel and not to the jury, and "Gentlemen of the jury, you will not consider the remarks made by the court for any purpose." With this explanation of the court to the bill we can not see any error in the ruling of the court. Of course, the statute expressly inhibits a comment of the court upon the weight or credibility of the witness, but a casual statement, which is subsequently withdrawn, indicating or expressing a comment of the court, like the above, we do not think is an error authorizing a reversal of this case.

Bill of exceptions number 3 shows while the same witness Barton was on the stand, the State, on direct-examination, asked him if he testified as shown in bill number 2, that he attended the trial of this case five times and had never been 'put on the stand before, if he knew one E. M. Setzer, and if the said Setzer was at Hudson's and saw the shot shirt at the same time he did, and if Setzer had been present at each of the other trials, and if Setzer was present on this occasion. The witness said he knew the witness Setzer; that he was at Hudson's at the time he saw the shirt; that Setzer had been present at each of the other trials, and that if he was not present he did not know it. Appellant objected to this on the ground that it was an effort to show that Setzer had been placed on the stand and had sworn as the witness Barton is now swearing, and that same was an attempt to get before the jury as a fact that Setzer had always sworn and would still swear to the same facts that Barton swore to on this trial, and that the same was improper, irrevelant, immaterial, and of a prejudicial nature. We understand why this was material testimony on the part of the witness Barton, and hence there was no question made as to its admissibility except on the ground that he said the witness Setzer was present at the time he saw the shirt; had been present at all the trials except the present one. We take it that where a witness testifies to a fact he can also testify to who was present at the time he saw or heard a fact being testified about, and we do not think it would be error for him to admit that he had seen the absent witness Setzer present at each trial up to the present. We do not see how the jury could legitimately deduce from the fact of his being present at the former trial and conclude that he had been placed upon the witness stand and testified to said facts. The bill does not show that they drew such an inference, nor does it show that the fact that he did testify was proven. We find no error in the matter complained of.

Bill of exceptions number 4 shows that the State placed the wife of defendant upon the stand, and the proof showed that she had been the wife up to the time of and prior to the killing of deceased, but who had since said time and before this trial been legally divorced from the said defendant as his wife, and before she was permitted

to testify the jury were retired out of hearing, and the defendant was permitted to examine Lydia Cole as to the conditions and circumstances under which the conversation took place in the parlor of the house of C. C. Hudson, between herself, her usband, and her father, and whereupon the said Lydia Cole testified as follows:

"Q. How came you to go into the room; isn't it true at that time you hadn't fully decided, you claimed he had been mean to you and you hadn't fully decided whether you would go back to him and you took him in there in order for you and him to talk it over and to say in your father's presence whatever grievance you had against him and for the purpose of Sam saying whatever he wanted to in order that your father might hear it and advise you in the matter? A. I wanted my father's advice. Q. You wouldn't have gone in there and had that conversation without taking Mr. Cole, the defendant, for the purpose as husband and wife to talk over in your father's presence what to do about it; wasn't your object in going in there so you could each have your say in the presence of your father, in order that you, with the advice of your father, he hearing what you both had to say, might advise you what to do in the matter? A. Of course, when I wanted to live with him all the advice in the world wouldn't have done any good. Q. What purpose and object did you have in going in there? A. We went in there to decide whether we would live together. Q. You went in to tell your grievances and reasons? A. Yes, sir. Q. That defendant and your father both might hear them? A. Yes, sir. Q. And in order that defendant and you, in your father's presence, might determine the matter; were you going to act on your father's advice? A. No, sir; but I wanted to hear my father's advice, but, still, if I wanted to live with him all the people in the world couldn't have kept me from it. Q. You wanted to get your father's advice? A. Yes, sir. Q. That is the reason your father went in there. A. That was my object in asking him in there. Q. There you were, man and wife separated, and you wanted to say in your father's presence the history of his wrongs to you, so Sam could hear what was said so he could say whatever he wanted to say and then to get your father's advice on the matter and act as you wanted to. A. Yes, sir. We were all there together and we all heard the conversation. Q. You said it for the purpose of inviting Sam's replies and answers? A. Yes, sir. Q. And Sam made his statements to both of you? A. Yes, sir. Q. Wasn't what you said in there to your father, wasn't that said just as much for Sam to hear it and reply to it, if he wanted to, as to your father? A. I had no objection to his speaking. Q. What I want to know now, is the purpose and object of you yourself in your mind in going in there and taking your father and your husband; I want to ask you if your object and purpose wasn't that Sam and you were on the eve of separating, if not already separated, that you hadn't fully made up your mind in the matter and that you took your father and

Sam both in there, and the statements made in there weren't made to your father any more than to Sam, that they were made for the purpose of both of them hearing that, and either would make such replies as they saw fit; you wanted to tell about Sam's cruelty to you and you wanted to say it there so that Sam might make such suggestions as he saw fit and so that your father might hear and advise you. A. Yes."

Upon cross-examination the witness testified: "I did not object to Sam, my husband, either hearing or replying to what I had to say. I made my statements so that he could do both; that is, hear and reply, and that my father could advise me." The court, thereupon, said she could testify as to when the communications were made, what communications were made and what not made, and what she said to her father and what her father said to her, to which ruling the defendant excepted. The jury were brought back, the court having held that she was competent to testify against the defendant as to all the communications that were made on said occasion in said parlor where there were present herself, her husband and her father, as between her father and herself, and what she said and what her father said, and as to any statement that was made by any of the parties, and thereupon she testified as follows:

"I stated to my father, on that occasion, in the presence of my husband, how Sam had mistreated me. I told my father that Sam had cursed me, and told him what he said. I told my father that he had cursed me. My father said that he was sorry to see us get along that way, and would like to see us get along and do well, that it was wrong for any man to abuse his wife, and that it was wrong for a man to curse his wife no matter what she did. My father did not say to me in that conversation in the presence of Sam that it was best for us to separate. He just said that he wanted to see us get along, and said as far as he separating us was concerned, he didn't make us marry, and he wouldn't try to separate us; he left that entirely with us, but if we did live together he wanted to see us get along." Appellant objected to all of said testimony, because it appeared that under all the circumstances developed by said testimony as to how it occurred, the same was confidential communications between Cole and his wife, and as such not admissible, and further, because it appeared from the other evidence in the cause, that this conversation occurred on the day after the transaction at Dan Hank's at which place Lydia Cole had returned from the lot crying from where the defendant was at the lot, and went with Hanks and family on that day to Hudson's, and that when Lydia Cole testified on this trial that she, in that conversation in the parlor, told her father that her husband, Sam Cole, had cursed and abused her, she was not detailing anything that occurred in the conversation in the parlor, but was testifying that she there told her father of the statements and conversations had with and to her on a previous occasion by Sam Cole,

and which constituted the cursing and abusing, and such statements constituting the cursing and abusing were in themselves confidential communications from the husband to the wife, that the wife, though now divorced cannot testify to before this jury directly or indirectly, and her statements now that she at that time told her father of those communications is in substance and effect now testifying to the jury to those communications. The court overruled all of said objections, and the defendant excepted for the reasons above stated. In the case of Ex parte Fatheree, 34 Texas Crim. Rep., 594, this court held that the dying declarations of the daughter made to the mother to the effect that her father had caused her death, could be proved by the wife and mother who had subsequent to said declarations been divorced from her husband. In that case the husband was indicted for the murder of his daughter, and the daughter's dying declarations were proved by the mother. In this case we have a recital by the wife of a conversation had with appellant, her husband, in the presence of her father. Here the wife is divorced at the time she testifies, and if the Fatheree case is correct in principle, it follows that the testimony in this case could be legitimately adduced. However, noticing the bill of exceptions, appellant states in his grounds of objections that this was a rehearsal of a previous conversation had with the husband. The court does not certify to this as a fact, but, under the rules of this court, on bills of exception it must affirmatively appear that the court states said matters as facts in that those matters are the basis of appellant's exception. However, aside from this, the wife states in the presence of her father that her husband had cursed her. Therefore, the conversation itself shows that she was detailing a previous abuse by the husband of herself. This being true, we take it that the bill is sufficiently explicit to present the proposition as to whether or not the conversation in question, between appellant's wife and himself, and testified to by her, was inhibited under article 774, Code Criminal Procedure. We hold that the same is not. We do not think the conversation here complained of comes within the rule laid down by this court in Davis v. State, 8 Texas Ct. Rep., 766. In that case it was a clear communication from the husband to the wife. Here there is no question but that it was a conversation between the father, the husband and the wife, and hence could not be a communication between the husband and wife as inhibited by the above article. However the writer does not believe that the principle laid down in Brock v. State, 6 Texas Ct. Rep., 319, and followed in the Davis case is correct. That is, that this court should reverse where bill of exceptions is not reserved to the admission or rejection of testimony. The Constitution limits the jurisdiction of this court under such rules and regulations as the Legislature may prescribe. The Legislature has explicitly provided that this court shall not reverse a case on the admission or rejection of testimony unless a bill of exceptions is reserved thereto. In this case we have a bill of exceptions.

However, we do not believe it is a privileged communication as contemplated by article 774. Therefore, the ruling of the trial court is correct.

Bill of exceptions number 5 shows that while defendant's witness Stonewall McKinney was on the stand, and after said witness had testified, as is shown in his testimony in the transcript that he had come in the buggy from Abilene by Content to Roland Hudson's house where Cole's wife was, and after McKinney had testified that on the next morning the defendant and his wife went in one buggy on the road towards C. C. Hudson's, the deceased, and that he followed in the other buggy, and that the defendant got out of the buggy with his wife, and his wife went on towards C. C. Hudson's, and the defendant got in the buggy with McKinney and did not go to Hudson's with his wife, and after McKinney had testified that he had asked the defendant why he did not go on with his wife to Hudson's, and after said witness had testified that the reason he did not go that his wife was afraid for him to go, because he would have trouble with her father, the defendant asked McKinney the question,—"what did the defendant tell you that his wife had told him as to anything she had heard her father say," and if he had been permitted to answer the witness McKinney would have stated that he said, that his wife told him that her father had said that if defendant ever came about the place any more he would kill him. The State objected to the question, and the court sustained the exceptions, in which rulings there was no error, since the declaration of the defendant to the witness McKinney was a self-serving declaration and hence inadmissible.

Bill of exceptions number 6 shows that the State put the witness L. Litt on the stand, who testified that while the defendant and Lydia Cole were husband and wife, and while Lydia Cole was living and staying at the house of deceased, at many different times prior to the homicide that the wife had come into his store with her mother, Mrs. C. C. Hudson, and Mrs. C. C. Hudson at and during said divers times had bought and paid for many divers and sundry articles of merchandise for Mrs. Lydia Cole. Appellant objected to this testimony on the ground that the same throws no light whatever upon the homicide and was prejudicial to the defendant, he not being present, and that there was no evidence showing he had any knowledge of said matters, to which bill is appended this explanation: "This testimony was given by the State after the letter from Sam Cole to his wife of April 10, 1902, was read to the jury, and was allowed for the purpose of rebutting said testimony and showing the attitude of Mrs. Hudson towards the wife of Sam Cole, and towards Sam Cole; the contention of the defendant being that said Mrs. Hudson was at all times during the marriage of Sam and Lydia Cole attempting to separate them." The bill does not show that the defendant did not know of the purchases, and the admission of this testimony under the circumstances of this case is harmless error.

Bill of exceptions number 7 shows the State introduced W. C. Gray, Jr., who testified that he was at C. C. Hudson's house shortly before the homicide, and that from his appearance he looked rather weak, and for some reason showed that he had been injured in some way, and out of health in some way. The defendant excepted and asked the court to exclude the same since it was admitted that the witness was not an expert or physician, and because it was an opinion and conclusion of the witness, and it was not shown that the defendant had any knowledge thereof. The court appended this explanation: "The evidence shows that the defendant Cole was living at the house of C. C. Hudson at the time testified to by the witness Gray, and that not while actually present the witness Gray testified that he saw defendant Cole on Hudson's place that day." This evidence was admissible. The condition of deceased physically could be testified to by a non-expert, or at least he could tell he was not a robust and stout looking man.

Bill of exceptions number 8 shows that appellant offered to prove by Grady Thompson and Mrs. E. Y. Thompson, that some months before the killing of deceased, the witness saw the said deceased at their house, a distance of some seven or eight miles from the residence of the said deceased, and that said deceased had a pistol on his person, and if said witnesses had been permitted to testify each of them would have so testified. The State objected on the ground that the fact proposed to be proven was never communicated to the defendant; that it did not tend to prove that deceased was in the habit of carrying a pistol nor that such was his general reputation, nor that he was carrying the pistol unlawfully at the time, it appearing from the statement of said witness that Hudson at the time was either going to or returning from Abilene in Taylor County, where he went about that time to deliver some cattle. The testimony was not admissible.

We find in the record what purports to be State's bill number 1 and State's bill number 2. For what purpose they were placed in the record we are at a loss to know, the State having no right of appeal, and furthermore, we do not find any approval on said bills.

In motion for a new trial we find that appellant insists that the court erred in limiting the right of appellant to act in self-defense only in event his wife was voluntarily leaving, whereas the evidence showed whether the wife was voluntarily leaving or not that Cole was taking his child, the possession and right of which in him as against the interference of Hudson his wife was absolute, away from Hudson's house, and that Hudson and wife were as much after the possession of the child and to prevent its being carried away as they could have been as to the wife, and the court should have charged the jury without reference to what Cole's rights of self-defense were with relation to his wife, that he had the right to take his child away from the place, and that if in attempting to take it away, Hudson and

his wife sought to prevent the same, that he had the right to use whatever force might be necessary to overcome the same, and if in attempting to take the child away, Hudson and wife made an attack upon him from which it reasonably appeared to him that he was in danger of death or serious bodily injury, then that he had the right to defend himself against such unlawful attack, and if it became necessary to kill Hudson to prevent the same that he had the right to do so.

We have carefully examined the charge of the court, and without viewing the same in tedious detail, will say that the same pertinently and properly presents the law of this case; that the special charges of appellant as far as applicable were covered by the main charge of the court, and finding no error in this record, the evidence being amply sufficient to support the verdict, the judgment is affirmed.

*Affirmed.*