## WIGGINS v. TILLER.　(No. 6541.)

(Court of Civil Appeals of Texas. San Antonio. April 13, 1921.)

1. **Evidence** ⟐273(5) — **Declarations against interest as to ownership of automobile held admissible.**

In an action to recover an automobile, declarations of defendant that he did not own the automobile, being against interest, would ordinarily be admissible for what it was worth.

2. **Witnesses** ⟐193—**Bystanders may testify as to declarations made by husband to wife.**

Declarations of husband made to wife in presence of third persons are not privileged, and such third persons are competent to state them; but declarations made in presence of wife alone are privileged.

3. **Witnesses** ⟐195—**Neither death nor divorce destroys privilege as to statements made to wife.**

Neither death nor divorce destroys the privilege that a spouse has under the rule of evidence that prohibits either one of them against the will of the other to lift the screen of privacy to public gaze and disclose statements made in private to each other in any conversation between them during their marriage relation.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Suit by C. E. Wiggins against C. A. Tiller. Judgment for defendant, and plaintiff appeals. Affirmed.

Charles T. Rowland and Marvin H. Brown, both of Forth Worth, for appellant.

Graves & Houtchens, of Fort Worth, for appellee.

COBBS, J. This suit was brought to recover a certain five-passenger Dodge automobile from appellee, who had been appellant's son-in-law, but at the time of the trial, and before suit was brought, had been divorced from Mrs. Ruth Maloney, then Ruth Tiller.

The case was submitted to the jury on special issues, and upon their finding the court rendered judgment awarding the car to appellee.

Appellant appealed and assigns as error the refusal of the court to permit the witness Mrs. Ruth Maloney to testify as to certain statements and declarations alleged to have been made by appellee during their marriage, and before they were divorced, as to the ownership of the car, which declarations, upon the objection made by appellee, were excluded, upon the ground that they were privileged communications between husband and wife of a confidential nature, and the witness was not permitted to testify. Appellant saved proper bill of exceptions to the ruling of the court. There is no necessity to set out more of the bill than a few paragraphs therefrom which present the material parts which appellant contends were admissible, but excluded, to. wit:

"Mr. Rowland: Q. Mrs. Maloney, did you have any conversation with your husband, Mr. Tiller, about the time this controversy came up about him carrying the car off and taking it away? A. One Sunday he left my house. We had had an argument. In fact, it ended with a fight, ended with a fight—

"The Court: Between whom? A. Between he and I, mostly he.

"Mr. Rowland: Q. About the car? A. About the car and about personal matters. Well, I went out to the car and I said, 'Well, you are not going to get this car.' I said, 'That is a positive fact.' I said, 'It doesn't belong to you, and you are not going to have it,' and he said:

'Listen, I will have that car, or I will burn it up. Now, I just leave set it on fire; I am determined that you and your sister will not have this car.' And I said, 'Well, you will not have it,' and he took me out and set me on the ground—there was neighbors there that witnessed this—and he jerked me out, and he said he was going to take it. Then I had two beautiful black eyes, and I went in the house, and he went on, and he said, 'Listen, I am sorry about the way I have done,' and he said, 'The car don't belong to me, and you can have it,' but he said, 'Let me take my clothes to my mother's, and you can have the car'—take the automobile and carry his clothes to his mother's. 'Well,' he said, 'you cannot have it, otherwise I will burn it up.' He said he was determined we should not have it, and he would burn it up before we could. Then he said we could have the car, and that my sister and I—

"Q. Did you care for him taking his clothes? A. It was not a case of whether I cared or not; he made a brief statement, and that was his statement.

"Q. You didn't make any objection? A. I made objections, but my objections—he just took it.

"Q. Did he take his clothes? A. He took his clothes, and he said he would leave this car at Reeves Garage after he took his clothes to his mother's.

"Q. For what purpose was he to leave it at Reeves Garage? A. For the purpose that the car belonged to my father and he didn't own it.

"Q. Was there any arrangement about you and your sister getting the car? A. He said we could get the car; that he had washed his hands, and he didn't want the car."

[1] This testimony was offered by the former wife of appellee as a witness to prove the alleged declarations, statements, and admission of her husband, to show that he claimed no interest in and had no title to the automobile in controversy. Such testimony, being a declaration against his interest, would ordinarily be admissible for what it was worth. That general rule is very well stated in Freda v. Tischbein, 174 Mich. 391, 140 N. W. 502, 49 L. R. A. (N. S.) 701 and annotations. To sustain the ruling of the trial court in excluding the testimony, appellee cites three cases: Lanham v. Lanham, 105 Tex. 91, 145 S. W. 336; Cole v. State, 48 Tex. Cr. R. 439, 88 S. W. 343; Cole v. State, 51 Tex. Cr. R. 89, 101 S. W. 218. These cases are also cited by appellant, with quite a number of others, to justify his contention.

[2] There are two lines of authorities on the subject as to when such are privileged and when not. That is, if made in the presence of others, they lose their sacredness and privilege. Part of the testimony or perhaps it might be said only the fight was witnessed "by neighbors," and no doubt they also witnessed the presentation of a pair of "beautiful black eyes" which she spoke of. At any rate, it does not appear that any declaration was made by appellee against

his interest in the presence of any of the neighbors that the car "did not belong to him," or any declaration at all showing non-claim. If so, the neighbors were competent to state the facts.

The testimony shows that immediately after the assault on her was made she went in the house, and we infer that he became ashamed of his unmanly assault upon a woman in such an outrageous way, and especially before his neighbors, and followed her into the house to make the amende honorable, in the nature of an apology, and then said, "Listen, I am sorry about the way I have done," and said:

"The car don't belong to me, and you can have it. * * * Let me take my clothes to my mother's, and you can have the car."

Appellant contends further that this testimony was admissible to corroborate the testimony of appellant and of O. P. Stanley as to the ownership of the car, as well as to contradict appellee in his alleged statement that he owned the car.

There is nothing in his former wife's statement to indicate that he ever said the car belonged to appellant. It is true she stated, in reply to a question as to what was his purpose in carrying the car to the garage, "for the purpose that the car belonged to my father and he did not own it." He has never lived with her since, and he never carried the car to the garage and has retained possession continuously ever since.

The statements of the husband, appellee, were all in connection with words of apology to an outraged wife, made to her in the presence of no one, under such circumstances as denominate them privileged. The statement that the car belonged to her father does not purport to be a declaration from him at all, but stated as her conclusion.

[3] We will not incumber this opinion to panegyrize the sacred relation of married life and that wise rule of evidence that prohibits either one of the spouses, against the will of the other, to lift the screen of privacy to public gaze and disclose statements made in private to each other in any conversation between them during their marriage relation. Neither death nor divorce destroys the privilege. The authorities are too numerous on this subject to be gainsaid, some of which we cite as follows: Lanham v. Lanham, 105 Tex. 91, 145 S. W. 336; Cole v. State, 48 Tex. Cr. 439, 88 S. W. 343; Cole v. State, 51 Tex. Cr. R. 89, 101 S. W. 218; Eddy v. Bosley, 34 Tex. Civ. App. 116, 78 S. W. 565; First National Bank' v. Hill, 151 S. W. 652; Reed v. Reed, 101 Mo. App. 176, 70 S. W. 505; Edwards v. Dismukes, 53 Tex. 605; Gross v. State, 61 Tex. Cr. R. 176, 135 S. W. 373, 33 L. R. A. (N. S.) 477. In this last-cited case the opinion was written

by the late Presiding Justice W. L. Davidson, of the Court of Criminal Appeals. He wrote so well and interestingly on the subject that it was published in 33 L. R. A. (N. S.) 478, where the entire subject is annotated.

From what we have said, it will be seen that we find no error in the judgment of the trial court, and it is affirmed.