## W. L. & MARY T. EDWARDS v. MARY E. DISMUKES.

*(Case No. 809.)*

1. DEED — DELIVERY.— The delivery of a deed properly executed by the husband and wife, and acknowledged by them in accordance with the statute, when the delivery is made by the husband, will pass the wife's title, though the delivery may have been made in violation of instructions from the wife, if the grantee had no notice of the instructions; *aliter*, if the grantee has notice that the delivery is unauthorized.

2. FRAUD — EVIDENCE — HUSBAND AND WIFE.— There is no rule of law which forbids the wife, in support of her rights against a third party, from testifying as to the fraudulent acts of her husband.

3. PRACTICE.— See statement for a case in which the husband was not a necessary party, and in which the dismissal of the suit as to him did not operate a discontinuance.

APPEAL from Anderson.  Tried below before the Hon. R. S. Walker.

Suit by Mary E. Dismukes, wife of George Dismukes, alleging that her husband refused to join her, brought October 13, 1877, against the appellant and her husband, in trespass to try title, to recover one thousand eight hundred and ninety-one acres of the Barnett league, and six hundred and six acres of the Adams league, claiming it as separate property.  Prayer was made to cancel a pretended deed from appellee and her husband to appellant Mary T. Edwards, without date, but acknowledged December 23, 1874, and filed for record August 31, 1875.  She alleged its procurement under fraudulent acts of W. L. Edwards, acting for himself and wife; that it was never delivered, and that its execution was only part of an arrangement to settle a law suit, the settlement of which was abandoned.

Answer, 1. General denial.  2. That the deed was given in settlement of certain matters in controversy pending in the district court of Anderson county at the time of its execution, and that the agreement was, substantially, that W. L. Edwards, as administrator of C. L. Kimbrough, former husband of Mary T. Edwards, was to take judgment in the district court

against appellee for $5,000, and that in consideration of the $5,000, and a further sum of $1,000, one-half of which was to be paid in cash, and which was paid, and the remaining $500 was to be paid when appellee and her husband complied with the contract alleged to have been made, to the effect that they should procure letters of guardianship of minor heirs of the estate of G. G. Kimbrough, or make them parties to the suit, and withdraw all answers and defenses, and allow W. L. Edwards, administrator, to take judgment against her and them for $5,000; and that appellee, intending to defraud appellant Mary T. Edwards, refused to apply for letters of guardianship, or to withdraw her pleadings, or to allow appellee W. L. Edwards to take judgment for said $5,000. That it was continued a long time to enable appellee to comply. Appellants alleged that they had always been, and were still, willing to comply with their promise to pay the $500, or whatever sum might be due in settlement of the matters in controversy.

Verdict and judgment for plaintiff.

On the 29th of May, A. D. 1874, W. L. Edwards, as administrator of the estate of C. L. Kimbrough (late husband of the other appellant), brought suit against Mary E. Dismukes, her husband, *pro forma*, her children by Geo. D. Kimbrough, and Bowen and Higginbotham, securities on Geo. D. Kimbrough's bond, as late administrator of C. L. Kimbrough's estate, and alleged that Geo. D. Kimbrough, as administrator, converted to his own use property of Kimbrough's estate, worth about $12,060. In the same year the defendants in that suit filed a general denial and an answer, showing that G. D. Kimbrough, as administrator, had accounted for all the property which came to his hands; that the two hundred acres of land, for the rents of which he was charged, were set aside to the widow, one of the appellants, and that he had paid claims against the estate, aggregating a larger amount than the money with which he was properly chargeable, and that C. L. Kimbrough's estate was indebted to Geo. D. Kimbrough's estate.

Messrs. Reagan, Greenwood & Gooch were the attorneys of Mrs. Dismukes in the case of Edwards, administrator, against Mrs. Dismukes and others, and appellants and their attorneys were aware of this fact.

The land was claimed by Edwards, administrator in that suit, to be the community property of Mrs. Dismukes and her former husband, and claimed by her to be her separate property.

This land was worth about $6,000, unincumbered. In December, 1874, or January, 1875, Messrs. Dismukes and Edwards went to R. McClure, Edwards' attorney, to have him draw up a deed and terms of a compromise of that suit. McClure drew up the deed sought to be cancelled in the present suit, and an agreement that Edwards, administrator, should take judgment ag iinst them for $5,000, and other relief prayed for, a part of which was that the land should be sold to pay the judgment, etc. McClure suggested that Dismukes should show these instruments to appellants' attorneys. Dismukes said that it made no difference to him whether he saw them or not; that he and his wife wanted to close up the suit and be done with it.

Messrs. Edwards and Dismukes after this suggestion took the deed and went away. Neither the deed nor agreement was shown to appellants' attorneys, nor were they consulted with or advised of the pending negotiation. This deed recited that the consideration was $5,000 cash in hand paid; $5,000 was also the amount which Messrs. Dismukes and Edwards desired that appellant and her children should have judgment against them for. No mention was made in the deed of the extra $1,000, nor any explanation to appellee about the same was provided for between Dismukes and Edwards.

Of this extra $1,000, $500 was paid in an individual note which Mr. Dismukes owed Mr. Edwards, for $242, bearing interest at three per cent. per month, and the difference paid in money, the amount not being shown. McClure said that this payment was made either before or after Mr. Dismukes went

to Grayson county with the deed and agreement for appellee's signature; and Edwards says that it was after he came back with the deed signed but without the agreement. The other $500 of the $1,000 was to be paid when appellant's children by her former husband had guardians appointed for them in the person of Geo. W. Dismukes, who would agree to abandon their interest in the land, if any they had, and who would consent that a judgment should be taken against them for $5,000. Mr. Dismukes, in pursuance to this arrangement, took the deed and agreement drawn up by Edwards' attorney, and started to Grayson county to get appellee's consent and signature to the deed. Mr. Dismukes returned in a few weeks with the deed signed by his wife, but not with an agreement so signed.

Edwards did not show that he inquired of Dismukes why the one was signed without the other, or whether his wife had consented to the arrangement, or to have made any other inquiry. McClure said that he thought the agreement was signed by Mr. Dismukes for himself and wife, and that the agreement taken by Dismukes to Grayson county was a copy of one which he thought was signed by Dismukes for himself and wife before he started, and he carried it to show what Mr. Dismukes proposed to do. Mr. Edwards received the deed in January, 1875. Afterwards, on February 19, 1875, McClure, Edwards' attorney, wrote another agreement in like purport with the first, and sent it to G. W. Dismukes to be signed by him and his wife, which was never signed. After other correspondence on the part of Edwards and his attorney to Mr. Dismukes, Edwards filed the deed for record in Anderson county, August 31, 1875. No agreement signed by any one was ever filed in the suit. In 1875, Edwards told one Morris that he didn't know whether Dismukes and wife would carry out the arrangement for settlement, but that he was safe, anyway, for the money he had loaned Dismukes, because Mr. Dismukes had turned over to him his (Morris') note for $400 for the rent of 1875, payable to Mrs. Dismukes.

Mrs. Dismukes never received any consideration for the deed. The testimony indicates that she never authorized its delivery to Edwards by Dismukes, and only authorized it to be handed to her attorneys, who were representing her and her children. She did not sign the agreement brought to her by Dismukes, nor the one sent in the letter by McClure.

*R. A. Reeves* for appellants.

I. The court erred in permitting the plaintiff to prove declarations and conversations between herself and her husband as to the delivery by her to her husband of the deed executed by her and her husband to the defendant Mary T. Edwards, for the land in controversy in this suit, and to prove what instructions she gave her husband about delivering said deed to her attorneys at Palestine, without showing that Edwards and wife had notice of the same, or were privy thereto, as shown by defendants' bill of exceptions. Shelly *v.* Burtis, 18 Tex., 650; Flanagan *v.* Oberthier, Tex. Law Jour., vol. 2, No. 70, p. 313; Pool *v.* Chase, 46 Tex., 207; Williams *v.* Pounds, 48 Tex., 141; Gee *v.* Scott, id., 510; Lucas *v.* Brooks, 18 Wall., 453.

II. The court erred in permitting the plaintiff to testify before the jury under what propositions she acted in signing the deed from herself and husband to Mary T. Edwards, and in stating the conversations between herself and her husband, and what her husband told her about said propositions, and what she told him, and to prove that her husband had committed a fraud upon her about the deed and compromise with Edwards and wife; it not being shown that Edwards and wife had notice or were privy thereto. Authorities above referred to.

[Counsel argued at length the alleged error in refusing the instructions referred to in the opinion.]

*Greenwood & Gooch* for appellee.

I. In this case it was shown that Edwards, acting for himself and wife, had notice, or the means of notice, of the want

of Dismukes' power to settle the suit and deliver the deed, and was connected with and participated in the effort and arrangement to defraud Mrs. Dismukes out of the land in controversy.

II. Whatever is notice enough to excite the attention of a man of ordinary prudence, and call for further inquiry, is, in equity, notice of all facts to the knowledge of which an inquiry suggested by such notice, and prosecuted with due and reasonable diligence, would have led. Kerr on Fraud and Mistake, 236 and 316.

III. Notice to an agent or attorney is notice to the principal. Id., 258.

IV. Gross inadequacy of price is a presumption of fraud. Id., 186.

V. In the absence of inquiry which ought to have been made, the court will assume that the person from whom it should have been made would have done what it was his duty to do. Id., 238.

VI. One who intentionally misrepresents a material fact, or produces a false impression in order to mislead or obtain an undue advantage, commits a manifest fraud. Story's Eq., sec. 192.

VII. It is a rule that all the material facts must be known to both parties to render an agreement fair, and any material misrepresentation or concealment, in cases where the parties have not equal access to the means of information, will vitiate and avoid a contract. 2 Kent's Com., 482, 491; 7 Wend., 380; 4 Tex., 79.

VIII. A deposit of a deed with a third person, to be delivered upon the happening of an event in the future, does not take effect until such event has happened, nor perhaps until the delivery after that time. Campbell v. Thomas, St. Louis Central Law Journal, Nov. 16, 1877, p. 429.

IX. All transactions in which the assent of the wife is obtained to the disposition of her property, will be scrutinized by the courts with a zealous vigilance, and her rights will be

protected against undue influence of either force, fraud or mistake.   Sampson *v.* Williamson, 6 Tex., 102.

X. Where a negotiation is pending for a compromise of a suit, and some of its terms are partly executed, and the arrangement is abandoned by both parties, even where there is no fraud, it will not be enforced.

GOULD, ASSOCIATE JUDGE.— 1. Appellants' second and fifth assignments of error assume that there was no evidence of notice to them that the husband of appellee was, under her instructions to him, without authority to deliver to them the deed which he and she had executed, and which she had separately acknowledged and entrusted to him.   If, however, we look beyond the bill of exceptions to the charge of the court, we find instructions to the jury, that the delivery of the deed by the husband would pass the title to appellants, notwithstanding it was made in violation of his instructions, if the appellants had no notice of such instructions.   Looking to the evidence and considering the terms of the alleged compromise, even as stated by appellants, we are of opinion that there was evidence tending to charge appellants with notice that the delivery of the deed was premature and unauthorized, and that it cannot be said that there was no evidence of notice of the instructions.

Although the bill of exceptions might well have explained that the court admitted evidence of the instructions, because there was evidence of notice, that fact amply appears from the record, and must be considered a sufficient justification of the ruling complained of.

If Edwards and wife received the deed, although privily acknowledged by Mrs. Dismukes, having notice that its delivery was unauthorized, it does not seems to be denied by appellants that the fact, if established by competent evidence, would entitle Mrs. Dismukes to relief.   They object, however, that Mrs. Dismukes was not competent to testify as to what instructions she gave her husband, or as to a fraud practiced on her by

Opinion of the court.

her husband. We remark that the husband was not a party to the suit at the trial; that the communication from the wife to the husband does not appear to have been of a confidential nature; and that we know of no rule of law which forbids the wife, in support of her rights against a third party, from testifying as to fraudulent acts of her husband.

2. The charge asked and refused on the subject of notice had been substantially given, and the refusal to repeat it was not error.

3. Dismukes, the husband, having refused to join in the suit, was not a necessary party, and the dismissal of the suit as to him did not operate a discontinuance.    McIntyre *v.* Chappell, 2 Tex., 378.

The judgment is affirmed.

[Opinion delivered November 25, 1879.]

### OPINION ON REHEARING.

Referring to the opinion originally delivered in this case, it is not proposed to add to it otherwise than by a very brief explanation.

The material issue of fact on the trial was whether the deed was delivered by authority of Mrs. Dismukes; and, if not, whether the circumstances authorized the defendants to receive the deed, believing that the husband was empowered to deliver it, or whether they had notice that its delivery was unauthorized.

The testimony of Mrs. Dismukes, that she instructed her husband to deliver the deed to her attorneys was admissible as amounting to a denial that she assented to its delivery to the defendants, with a fact added explaining to whom and for what purpose it was to be delivered. If, under the circumstances, Edwards and wife had notice that the delivery of the deed to them was unauthorized, that was equivalent to notice of the purport of Mrs. Dismukes' instructions to her husband. We are still of the opinion that there was evidence sufficient to support a verdict charging defendants with notice of the

husband's want of authority to deliver the deed,.and sufficient to justify the action of the court in admitting her to testify as to her instructions. This disposes of the ground of error most strongly urged by counsel.

We remark that the record shows that Mrs. Dismukes regarded the suit against her as one to be compromised, and executed the deed in the expectation that it would be used in such a compromise. Whilst this fact might give rise to a surmise or suspicion that the suit against her was based on a just claim, it is certainly not of itself sufficient to establish that fact, nor is there any evidence in the record enabling us to see that the claim was just. We have disposed of the case on the legal questions presented; and, whilst the possibility that the result may be a hardship may have had its influence in leading us to grant a rehearing and have the case argued a second time, we have arrived at the conclusion that there is no valid reason why the judgment should be reversed. Accordingly, the judgment is affirmed.

AFFIRMED.

[Opinion delivered October 19, 1880.]