FIRST BANK OF SPRINGTOWN v. HILL.

(Court of Civil Appeals of Texas. Texarkana. Dec. 2, 1912. Rehearing Denied Dec. 12, 1912.)

1. WITNESSES (§ 379*)—IMPEACHMENT.

Where, in an action by a wife to recover a note constituting her separate property, the issue was whether she had consented to the transfer of the note, actually delivered to defendant by her husband, and the husband testified to facts showing her consent to the transfer, evidence of his confession that he had wrongfully disposed of the note was admissible to impeach his testimony.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1209, 1220–1222, 1247–1256; Dec. Dig. § 379.*]

2. WITNESSES (§ 193*)—COMPETENCY—HUSBAND AND WIFE.

Under Rev. St. 1895, art 2301, providing that the husband or wife of a party to a suit, or who is interested in the issue, shall not be competent to testify as to confidential communications, communications between husband and wife in the presence of third persons are not generally confidential.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 740, 741; Dec. Dig. § 193.*]

3. WITNESSES (§ 190*)—COMPETENCY—HUSBAND AND WIFE.

A conversation between husband and wife concerning her property rights and his admission to a wrongful transfer of her separate personalty are not privileged, within Rev. St.

1895, art. 2301, making confidential communications between husband and wife privileged, and the wife suing for the property may testify to such conversations.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 737; Dec. Dig. § 190.*]

4. APPEAL AND ERROR (§ 1048*)—HARMLESS ERROR—ERRONEOUS RULINGS ON EVIDENCE.

The error, if any, in overruling an objection to a question, is not prejudicial where no affirmative fact was elicited.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4140–4145, 4151, 4158–4160; Dec. Dig. § 1048.*]

5. WITNESSES (§ 346*)—IMPEACHMENT.

Where, in a suit by a wife to recover a note constituting her separate property, the issue was whether she had consented to the transfer actually made by her husband, or whether he had wrongfully transferred it, and he testified to her consent to the transfer, proof that he attempted to have a material witness for the wife evade process was admissible to impeach the husband's credibility by showing his interest in the case.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1133; Dec. Dig. § 346.*]

6. PARTNERSHIP (§ 219*)—PARTNERSHIP TRANSACTION—JUDGMENT AGAINST PARTNERS.

Where the petition, in an action against a firm, was sufficient to support a judgment against each partner personally, as well as against the firm, a partner against whom a personal judgment was rendered could not complain because no such judgment was rendered against the copartners.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 429–445; Dec. Dig. § 219.*]

7. APPEAL AND ERROR (§ 750*)—ASSIGNMENTS OF ERROR—QUESTIONS PRESENTED.

An assignment of error that a petition does not authorize a judgment does not raise the question of the sufficiency of service of process.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3074–3083; Dec. Dig. § 750.*]

8. JUDGMENT (§ 253*)—CONFORMITY TO PLEADINGS—PRAYER FOR RELIEF.

Where a petition demanded the return of a note, or its value, and alleged the value of the note at a specified sum and claimed damages in such sum, a money judgment could not exceed the amount stated in the petition.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 443, 444; Dec. Dig. § 253.*]

Appeal from District Court, Parker County; J. W. Patterson, Judge.

Action by Mrs. M. C. Hill against the First Bank of Springtown. From a judgment for plaintiff, defendant appeals. Reformed and affirmed.

Stennis & Wilson and McCall & McCall, all of Weatherford, for appellant. Hood & Shadle, of Weatherford, for appellee.

HODGES, J. The appellee, Mrs. M. C. Hill, instituted this suit against the First Bank of Springtown, a partnership composed of J. F. Ward, its president, J. D. Doughty, E. F. Ward, G. S. Frazier, G. B. Moody, Jim McDonald, Walter Doughty, and Henry Ward, for the possession of a promissory note or its value. The note is described as one

executed by J. R. Pugh and wife to J. K. P. Hill for the sum of $1,000, with interest at the rate of 10 per cent. per annum from date, payable annually, and 10 per cent. attorney's fees if collected by process of law. It is dated January 1, 1909, and due two years after date, and is secured by a deed of trust on real estate. It is admitted that the note is entitled to a credit of $100 for interest paid for the first year after its execution. The petition alleges that the note was the separate property of the plaintiff; that on the ———— day of October, 1910, it was transferred and assigned to the appellant bank by her then husband, John Birdwell, without her knowledge or consent. From a judgment in her favor for the recovery of the note and for $1,178.06, its value in case it is not produced and delivered in accordance with the decree of the court within 20 days thereafter, the defendants below have prosecuted this appeal.

[1] The facts show that appellee was formerly the widow of J. K. P. Hill, deceased. On September 5, 1910, she was married to John Birdwell, who was then only about 24 years of age, 20 years younger than the appellee. In connection with this disparity in their ages there was some testimony tending to show that Birdwell married the appellee in order to get possession of her property; she being at the time worth about $40,000. A part of the property which she owned consisted of the $1,000 note described in the petition. Birdwell and his wife lived together only a few weeks, and then permanently separated. According to the testimony offered by the appellee, during the time they were living together, Birdwell surreptitiously secured possession of the note and without her knowledge or consent transferred it to the appellant, and then deserted her. The note when offered in evidence upon the trial had upon it a written assignment bearing the signature by mark of Mrs. Birdwell. There was also attached the signature of John Birdwell, the husband, and of two other persons purporting to be witnesses. Birdwell testified that after he and his wife were married the subject of paying off some of his personal debts was discussed between them; that in order to enable him to pay those debts she agreed that he might transfer to the appellant bank the note in controversy, and delivered it to him for that purpose; that, when he presented the note to Ward, the president of the bank, the latter informed him that Mrs. Birdwell would have to indorse it; that Ward wrote the assignment on the back of the note and instructed witness to have his wife sign the instrument in the manner described. Birdwell says that he told Ward that his wife could not write; that Ward thereupon instructed him how he could affix her signature by mark, and directed him to have two witnesses attest that fact. He further testified that upon his return home

he informed his wife of what Ward had told him, and the next morning she, in the presence of two witnesses and Birdwell's mother, affixed her mark to the signature as shown in the note, and that the two witnesses signed for the purpose of attesting the genuineness of that signature. As to the fact that Mrs. Birdwell had affixed her mark under the circumstances detailed by John Birdwell, the latter was corroborated by the two subscribing witnesses and by his mother, who claims to have been present at the time; the transaction having occurred at her house. Ward, the president of the bank, testified that when Birdwell presented the note to him he knew that it was the separate property of Mrs. Birdwell, and for that reason informed Birdwell that his wife would have to sign the transfer. Mrs. Hill, the appellee, denied all of those transactions, stating that she had never signed the transfer of the note by her mark or otherwise; that she never consented for it to be assigned, and did not know that it had been assigned till after her separation from Birdwell. There was a sharp conflict between her testimony and that of Birdwell, his mother, and the subscribing witnesses to the transfer.

It is insisted by the appellant that the court erred in permitting the plaintiff to testify as to what was said in an interview with her husband after their separation and after the note had been transferred to the appellant bank. The language objected to is as follows: "I replied, 'No, sir; the way you have treated me, stole my note, I can never live with you.' He did not deny it. He never made any reply; just dropped his head." Again, she says that Birdwell told her: "I feel too mean to live this morning. Linda, have mercy on me and give me a few days to see if I cannot get the note back." According to the testimony of Mrs. Hill, after her separation from Birdwell, she went to visit her sister, Mrs. De Spain, who lived in that vicinity. While she was there Birdwell sought and obtained an interview with her for the purpose of persuading her to again live with him. It was during that interview, and after he had been charged by her with having stolen her note, that the language referred to was used. Birdwell denies that any such conversation ever took place. This testimony was probably admitted for the purpose of impeaching John Birdwell, who swore that his former wife had signed the written transfer of the note and had consented to its assignment to the appellant. It could have no other relevancy. Practically the only issue in the trial of this case in the court below was whether or not the appellee had consented to the assignment and had executed the written transfer. The testimony shows conclusively that the note was her separate property and that Ward knew this fact at the time he took it. Birdwell having testified, as he did, positively

that his wife had signed the written transfer at the time and under the circumstances detailed by him, any legitimate means of impeaching him upon that issue was permissible. The particular objection most strenuously urged by the appellant against the admission of this testimony is that the appellee was permitted to disclose confidential communications between her and Birdwell, who was at the time her husband; and it is upon that ground that we are asked to revise the ruling of the court and reverse the judgment. There is more than one reason for overruling that objection. Most of the conversation set out in the bills of exception occurred in the presence of a third party, Miss Bertha De Spain, who is shown to have been present at the time and who testified to substantially the same facts without objection.

[2, 3] Article 2301 of the Revised Civil Statutes is as follows: "The husband or wife of a party to a suit or proceeding, or who is interested in the issue to be tried, shall not be incompetent to testify therein except as to confidential communications between such husband and wife." In order that communications between husband and wife shall be held privileged under this statute, they must be such as should be regarded as confidential. Mitchell v. Mitchell, 80 Tex. 116, 15 S. W. 705; Eddy v. Bosley, 34 Tex. Civ. App. 116, 78 S. W. 565. Conversations which take place in the presence of third parties are not usually or generally to be considered confidential within the meaning of the law. 10 Ency. Ev. 193, and cases cited; 4 Wigmore on Evidence, § 2336, and notes. Whether or not the third person was present is a question for the court in passing upon the admissibility of the proffered testimony. 10 Ency. Ev. 196. From an examination of the statements objected to it appears that the only expression used by Mrs. Hill upon that occasion and detailed in her testimony, which was not made in the presence of Miss De Spain, was, "Linda, have mercy on me and give me a few days to see if I cannot get the note back." This seems to have been but a continuation of the conversation previously begun in the presence of Miss De Spain. The testimony of both the appellee and Miss De Spain shows a meeting between the husband and wife after separation, in which it appears that the wife repelled his advances and refused to receive him again as her husband. The testimony of appellee upon this issue as set out in the record is as follows: "After John Birdwell left me he came to the house of my brother-in-law, Mr. De Spain, where I was, and when he first came in he asked me to let him come back to live with me, and I replied: 'No, sir; the way you have treated me, stole my note, I can never live with you.' He did not deny it. He never made any reply; just dropped his head. Immediately thereafter I asked him, 'Johnnie, don't you feel mean after

stealing my note?' and he answered, 'I feel too mean to live this morning.' Immediately thereafter John Birdwell went into the hall and sat down on a bed. I did not stay there but just a few minutes. I went there just because John Birdwell asked me to go there and sit down with him. There he said, 'Linda, have mercy on me and give me a few days to see if I cannot get the note back.' I then got up and left the room and went into the room where my sister was sick in bed, and did not go back to John Birdwell; and from that time forward I have not spoken to him." It appears from this testimony that Birdwell's wife charged him with having wrongfully appropriated and disposed of her separate property, and that he admitted it and begged for mercy. Such a conversation concerning the wife's property rights should not, we think, be regarded as communications coming within the rule which makes them privileged under the statute. In a controversy like this, to so apply the rule would assist the husband in consummating the perpetration of a fraud against the property rights of the wife. Eddy v. Bosley, supra; Edwards v. Dismukes, 53 Tex. 611; 10 Ency. Ev. pp. 171–193. If the appellee is correct in her statement of what took place between her and John Birdwell upon that occasion, it amounted to a confession by him that he had wrongfully and unlawfully disposed of her property. Such an admission was wholly inconsistent with his testimony upon the trial that his wife had consented to the transfer. That confession was not only material for the purpose of contradicting Birdwell and of impeaching his credibility as a witness in this suit, but also tended to show a transaction which made the husband the wife's debtor. Some of the authorities referred to by the appellant are opinions rendered in criminal cases where the admissibility of the testimony was governed by article 774 of the Code of Criminal Procedure of this state. Such authorities are not applicable to this case.

[4] Objection is also made to the ruling of the court in requiring John Birdwell on cross-examination to answer as to whether or not he had such conversation with his wife as that detailed by her and Miss De Spain. In addition to the reasons which we have just discussed, it may also be said that no error was here committed because the witness Birdwell denied that any such conversation ever took place; hence no affirmative fact was elicited from him that could have injured the appellant in any respect.

[5] The eleventh assignment of error is as follows: "The court erred in admitting the testimony of plaintiff's witness Conrad Blackwell to testify in substance that, before the court met six months ago, John Birdwell came to him and asked him if he could not go visiting and stay awhile, and that he asked witness if he could not keep away

from the officers if they came down to subpœna him until after court met, in this, that said testimony was immaterial and an attempt to impeach a witness on an immaterial point." It appears that Birdwell had been asked if he had not approached Blackwell for the purposes indicated by Blackwell's testimony as shown in this assignment. Blackwell had testified that some time during that fall, after Birdwell and the appellee were married, and while they were living with Birdwell's mother, Birdwell came to him in the field and exhibited the note in question, and at the time stated that he had just had it fixed; that he came from the direction where Abe Birdwell (one of the subscribing witnesses) lived, and it was about 3 o'clock in the evening; that Birdwell then left him, saying that he was going to Springtown. This evidence tended to contradict Birdwell and three other witnesses as to the assignment having been executed and witnessed at the home of Birdwell's mother. Blackwell might naturally be looked upon by Birdwell as a hostile witness, and an effort to have this witness evade the process for bringing him into court to testify in this case would indicate more than ordinary interest on the part of Birdwell. As tending to show this interest, the testimony was properly admitted. 2 Ency. Ev. 406; 1 Greenleaf on Ev. §§ 450, 450a; 2 Wigmore on Ev. § 960. That is one of the methods of impeaching the credibility of a witness.

[6] It is also claimed that the court erred in rendering judgment against John F. Ward, president of the bank, individually, because such a judgment was not warranted by the pleadings. While in this respect the original petition is not as specific as it might have been, yet we think that in substance it is sufficient to support a judgment against each of the partners personally as well as against the firm. The fact that Ward is the only one of those partners against whom such a personal judgment was rendered is a matter of which he cannot complain.

[7] The question of the sufficiency of the service is not raised by this assignment. The complaint is that the pleadings did not authorize the judgment. We are not required to look any farther than the pleadings in passing upon this assignment.

[8] Complaint is also made that the amount of the judgment exceeds the amount sued for and bears a larger rate of interest than the court should have permitted. The plaintiff in her original petition alleged that the value of the note was $1,125, which was the principal and accrued interest at the time suit was filed. It is also alleged that she had been damaged in that sum by the wrongful transfer of the note; the petition concluding with a prayer for damages to that extent. The jury, under an instruction from the court, found that the note was of the value of $1,178.06, and a judgment

was entered against the appellant for that sum. While this amount might have been recovered under proper pleadings, it was unauthorized by those upon which the case was tried. We think therefore that the judgment should be reformed so as to allow a recovery only for the amount sued for with interest thereon at the rate of 6 per cent. per annum from the date of the rendition of that judgment in the trial court.

As reformed the judgment is affirmed, and the costs of this appeal are adjudged against the appellee.