## MRS. MARY FARRIS v. THE STATE.

### No. 3214.   Decided October 14, 1914.

### Rehearing denied November 11, 1914.

**1.—Keeping a Disorderly House—Evidence—Husband and Wife.**

Upon trial of keeping a bawdy house, there was no error in permitting witnesses for the State to testify that defendant's husband was in the automobile business and would bring men and women to said house to engage in unlawful cohabitation; this would not be the husband giving testimony against the wife.

**2.—Same—Rule Stated—Husband and Wife—Misdemeanor—Principals.**

Where the husband aids the wife in keeping a disorderly or bawdy house, such fact can be shown by other witnesses. In misdemeanors all persons aiding and abetting in the commission of the offense are principals, and their acts and conduct are admissible in evidence. Following Cook v. State, 22 Texas Crim. App., 525, and other cases.

**3.—Same—Separation of Jury—Misdemeanor.**

Where, upon trial of keeping a disorderly house, the jury were permitted under instructions of the court to separate, and there was nothing to show an

abuse of discretion or improper conduct on the part of the jury, there was no reversible error.

### 4.—Same—Evidence—Declarations of Husband.

Where the defendant acted together with her husband in keeping a disorderly or bawdy house, there was no error in permitting the State's witness to testify that the husband requested her to stay at the house of his wife, telling her she could make lots of money if she would do so; this was not compelling the husband to testify against the wife. Following Cole v. State, 51 Texas Crim. Rep., 89, and other cases.

### 5.—Same—Evidence—Husband and Wife.

Upon trial of keeping a disorderly or bawdy house, there was no error in admitting testimony as to the acts of defendant's husband which would tend to show that he was aiding and assisting her in keeping said disorderly house.

### 6.—Same—Evidence—Reputation of House.

Upon trial of keeping a disorderly house, there was no error in permitting the State's witness to testify that while she was rooming at said house, men could come there and she would go to other places and have sexual intercourse with them; besides, she testified to having sexual intercourse at said house.

### 7.—Same—Evidence—Defendant's Knowledge.

Upon trial of keeping a disorderly house, there was no error in admitting testimony tending to show that one of defendant's roomers was a prostitute, and to show that defendant was aware of that fact.

### 8.—Same—Evidence—Immateriality of Testimony.

Upon trial of keeping a disorderly house, there was no error in not permitting the defendant to ask a State's witness if he had not tried to get an inmate of defendant's house to go around with him to other places and engage rooms for the purpose of entrapping other persons, there being nothing to show that he had entrapped this inmate, or sought to get her to bring other women to said house.

### 9.—Same—Argument of Counsel.

Where the argument of State's counsel was in response to that made by appellant, the same was not reversible error.

Appeal from the Harris County Court at Law.   Tried below before the Hon. C. C. Wren.

Appeal from a conviction of keeping a disorderly house; penalty, a fine of $200.

The opinion states the case.

*Heidingsfelders,* for appellant.

*C. E. Lane,* Assistant Attorney General, for the State.—On question of communications between husband and wife made in the presence of others:   Bryan v. State, 63 Texas Crim. Rep., 200, and cases cited in opinion.

HARPER, Judge.—Appellant was prosecuted and convicted of keeping a disorderly or bawdy house, from which judgment she prosecutes this appeal.

Bessie Craft, Francis Gay and other witnesses for the State were permitted to testify that appellant's husband was in the automobile business, and that he would bring men and women to the house. Appellant objected to this testimony, alleging "that defendant was the wife of Mr. Farris and that the husband could not testify directly or indirectly against the wife, and that it was an attempt to admit evidence of the acts, conduct and doings of the husband, indirectly, which could not be proven directly, and further that acts, statements and declarations of the husband could not be used against the wife; was hearsay, inadmissible for any purpose and highly prejudicial." Appellant was being prosecuted for keeping a house where prostitutes resorted and resided for the purpose of plying their vocation, and a house where men and women met by mutual appointment for the purpose of sexual intercourse, and the fact that witnesses testify that appellant's husband brought men and women there to engage in unlawful cohabitation would be admissible testimony. The husband, of course, could not be called to give such testimony, but any person who saw the husband engaged in such acts could so testify, and it would not be the husband giving testimony against the wife either directly or indirectly. Such facts were cogent circumstances tending to prove that appellant was in fact keeping a bawdy house, and the court did not err in admitting the testimony. If the husband was thus actively engaged in aiding his wife in violation of the law, his acts and conduct in so doing could be proven, not by him but by competent witnesses. This testimony went to show that the husband would get men and women in his automobile and carry them to the home kept by his wife where they would enter the house and engage in the unlawful acts. Where the husband aids the wife in the commission of a crime such fact can be shown. In a misdemeanor, all persons aiding and abetting the commission of an offense are principals and may be prosecuted as such, and the acts testified as being committed by him, if true, would render him liable as a principal offender, and under such a state of facts his acts and conduct were admissible. Branch's Crim. Law, sec. 681; Cook v. State, 22 Texas Crim. App., 511; Cox v. State, 8 Texas Crim. App., 254.

The second bill of exceptions complains of the action of the court in permitting the jury to separate after they had received the charge from the court. The facts are, the case was completed late in the afternoon, and the jurymen not arriving at a verdict were permitted to go to their respective places of abode for the night. This offense is a misdemeanor, and article 746 of the Code of Criminal Procedure provides that in a case of misdemeanor, the court may, at his discretion, permit the jury to separate before verdict, after giving them proper instructions. It is not contended that the court did not properly instruct the jury or that the jury was guilty of any improper conduct, the contention being that the error consisted in permitting the jury to separate, consequently there is nothing to show that the court abused his discretion in permitting the jury to separate, and in the absence of any attempt to show

improper conduct on the part of the jury, the bill presents no error.

In bill No. 3 it is complained that the court erred in permitting the witness Bessie Craft to testify that Mr. Farris requested her to stay at the house of his wife, and told her she could make lots of money if she would stay there. Of course if the appellant was not present when this conversation took place, and it was not in furtherance of the commission of an offense in which both are principal offenders, there might be grounds of objection, but no such contention is made, the objection being that it would be the husband giving testimony against his wife, and compelling him to do so. Such objection is not sound. In Cook v. State, 22 Texas Crim. App., 511, it is held that if husband and wife act together in the commission of an offense, acts and declarations of either which are res gestae of the transaction, are admissible. And in Cole v. State, 51 Texas Crim. Rep., 89, and Richards v. State, 55 Texas Crim. Rep., 278, this court has held that even communications between husband and wife in the presence of another person may be proven by such person, and if that is true, certainly it would be admissible to show the remarks of either to a third person which tended to show that they were engaged in an unlawful undertaking. The same may be said as to the testimony of Francis Gay, who testified to acts of Mr. Farris which would tend to show that he was aiding and assisting his wife in running the disorderly house.

As to the testimony of Mrs. Hayden that while she was rooming at the house of appellant men would come there and she would go to other places and have sexual intercourse with them, it certainly would be admissible as tending to show that appellant kept a house where prostitutes resided and especially is this true in the light of Mrs. Hayden's further testimony that she had sexual intercourse with men many times in the room rented by her from appellant. She testified "during the time I was rooming at the house of Mrs. Farris I had intercourse with Mr. Gay. I also had intercourse with other men while living at Mrs. Farris' house."

In another bill it is shown that a Mr. Bourgeois first testified that he had improper relations with one Inez Wood, who was a roomer at Mrs. Farris' house—at defendant's house. Later he testified that the intercourse did not take place at Mrs. Farris' house, but he would call and get Inez Wood and take her to other places for that purpose. Defendant moved to exclude the testimony of the witness. The court did not err in refusing to do so, because it tended to show that one of her roomers, Inez Wood, was a prostitute, and the further testimony of this witness would tend to show that appellant was aware of that fact.

Appellant complains that the court in refusing to permit her to ask Henry Wood, a witness for the State, if he had not tried to get Madge Robinson, an inmate of her house, to go around with him to other places and engage rooms for the purpose of entrapping such persons, committed error. As it is not contended that Woods had brought Madge Robinson or sought to get her to bring any other woman to her house, it would be immaterial whether or not he had sought to get her to

assist him in catching other people at different houses for a similar offense, for if he had done so, and Madge Robinson refused, it might tend to show animosity towards Madge Robinson, but not towards this appellant. Such fact was foreign to any issue in this case.

The only other bill in the record recites that while appellant's counsel was speaking he used the following language: "Gentlemen of the jury, I don't blame Gay for slipping in Mrs. Hayden's room and stealing a piece," when Madge Robinson laughed aloud. He then complains that when the prosecuting officer was replying to his speech, he said: "Look at Madge Robinson, didn't you see her laugh?" when defendant's counsel made the remark above quoted. Appellant complains that this remark was very harmful to appellant. As appellant's counsel had made the remark and elicited the laugh from Madge Robinson, the incidental reference to such proceeding by State's counsel would not be cause for reversal of the case.

These are all the bills of exception in the record, and in our opinion none of them present reversible error, and the judgment is affirmed.

*Affirmed.*

[Rehearing denied November 11, 1914.—Reporter.]