### Jesse Clark v. The State.

#### No. 3421.  Decided February 17, 1915.

#### Rehearing denied March 17, 1915.

**1.—Pandering—Indictment—Description of House.**

Where, upon trial of pandering, the indictment followed approved precedent, there was no error in overruling a motion to quash the indictment, and it was not necessary to allege the specific house of ill-fame. Following Sprague v. State, 44 S. W. Rep., 837, and other cases.

**2.—Same—Continuance—Representation by Counsel.**

Where defendant was ably represented by counsel on the trial of the case, and the motion for continuance did not show that defendant desired any witnesses other than those in attendance upon trial, there was no error in overruling the motion.

**3.—Same—Evidence—Name of House.**

Where the indictment alleged that defendant procured a certain female to enter a place where prostitution was encouraged or allowed, there was no error in admitting testimony to support this allegation, and it was not necessary to name the house in the indictment.

**4.—Same—Evidence—Reputation of House.**

Where the indictment alleged that defendant procured a certain female to enter a house where prostitution was allowed, there was no error in admitting testimony as to the bad reputation of said house as a place of prostitution, and that an arrest of prostitutes was made therein, and that such general reputation of the house extended some time back. Following Golden v. State, 34 Texas Crim. Rep., 143, and other cases.

**5.—Same—Charge of Court—Definition.**

It was not necessary for the court to define in his charge the terms "prostitution" and "house of ill-fame," as the meaning of these words is well understood.

**6.—Same—Definition of Offense—Charge of Court.**

While the court should not have copied the entire section defining the offense of pandering, but only the subdivision which is charged in the indictment, yet as he only submitted said subdivision and restricted the jury to the consideration thereof in applying the law to the facts, there was no reversible error.

**7.—Same—Charge of Court—Different Counts.**

Where, upon trial of pandering, the indictment charged two counts, the second of which only was submitted by the court, there was no error in refusing a special instruction submitting the first count and not the second count, the evidence supporting a conviction under said second count, and the court otherwise properly charging on the evidence thereunder.

**8.—Same—Motion for New Trial—Affidavit.**

Where an affidavit of one of the main State's witnesses was attached to the motion for new trial alleging that the witness testified falsely in several particulars on the trial of the case, but the other evidence in the case sustains such conviction without such testimony, there was no error.

**9.—Same—Charge of Court—Additional Instructions—Indeterminate Sentence Law.**

Where, upon trial of pandering, the jury asked for additional instructions as to the application of the indeterminate sentence law, and the court correctly charged what was meant thereby, there was no reversible error, although the court should have informed the jury that they had nothing to do with the application thereof.

**10.—Same—Sufficiency of the Evidence.**

Where, upon trial of pandering, the evidence sustained the conviction, under a proper charge of the court, there was no reversible error.

Appeal from the District Court of Tarrant. Tried below before the Hon. Marvin H. Brown.

Appeal from a conviction of pandering; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*Power & Malone,* for appellant.—On question of insufficiency of indictment: Lackey v. State, 53 Texas Crim. Rep., 459, 110 S. W. Rep., 903; Daugherty v. State, 56 S. W. Rep., 620; Beasley v. State, 47 S. W. Rep., 991; Jones v. State, 8 Texas Crim. App., 648.

On question of court's charge in withdrawing count from consideration of the jury: Winzel v. State, 83 S. W. Rep., 187.

On question of additional instructions: Washington v. State, 68 Texas Crim. Rep., 214, 151 S. W. Rep., 818; Clay v. State, 170 S. W. Rep., 743.

On question of false testimony of State's witness: Brown v. State, 13 Texas Crim. App., 59; Bostick v. State, 10 id., 705.

On question of insufficiency of the evidence: Jones v. State, 8 Texas Crim. App., 648; Peckham v. State, 28 S. W. Rep., 532.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, Judge.—Appellant was indicted charged with pandering, under that clause in the statute defining the offense thus: "by abuse of any position of confidence or authority procure a female to become or remain an inmate of a house of ill-fame, or to enter a place wherein prostitution is encouraged or allowed." The indictment follows the language of the statute, and the court did not err in overruling the motion to quash it. It was not necessary to allege in the indictment the specific house. Sprague v. State, 44 S. W. Rep., 837; Lowe v. State, 4 Texas Crim. App., 34.

The bill of indictment in this case was returned against appellant September 16, and he was arrested on that date. The case was called for trial on October 1st, when appellant moved to continue the case because he had been unable to get in communication with his father, whom he says would assist him. It does not appear that appellant's father knew anything about the facts in this case—in fact, the affidavit of the father attached to the motion shows he did not know anything about the case, but in it he says he would have assisted appellant in securing counsel. As appellant was ably represented by counsel on the trial of the case, and it is not shown in the motion that he desired any witness other than those in attendance on the trial, the court did not abuse the discretion confided in him by overruling the motion.

The State introduced Dora Conner as a witness, who testified that appellant and Mary Pitts, who, it is alleged, he induced to enter a house where prostitution was permitted, stopped at the Westbrook hotel for about seven days. The witness testified to facts showing that appellant and Mary Pitts registered as husband and wife and occupied the same room, and to the fact that she saw other men go into the room occupied by Mary Pitts. The objection to the testimony was: "The said testimony was irrelevant and immaterial in this: that the indictment does not allege that the 66 rooming house is or was a house of prostitution and does not allege that any other hotel, rooming house, or other house to be a house of prostitution." This is but another way of raising the question that the house must be named in the indictment. The indictment does allege that appellant procured Mary Pitts to enter a place where prostitution was encouraged or allowed, and after the State had proven that appellant procured the woman to enter a place, it would be incumbent on the State to prove that the place was one in which prostitution was encouraged or allowed, and the court did not err in overruling the objection made. The same objection was urged to the testimony of Mary Pitts. As it was not necessary to name the house in the indictment, the objection made was properly overruled.

W. E. Wallace testified: "I am city detective of Fort Worth. I know Mrs. Hartsell. I have known her about two years. Her reputation is that of a woman of lewd character. I know the place she runs over the 66 bar; it is a rooming house up over a saloon on the corner of Thirteenth and Main. I know the general reputation of that place as to being a place of prostitution or a place where prostitution is per-

mitted or otherwise; its general reputation is that of a house of prostitution. I know of some arrests being made there of prostitutes; I remember one occasion personally when I made the arrest myself with Mr. Lass; we arrested three women; that has been a year ago; I could not say that they paid fines for being prostitutes; I know two of the women were in bed with a couple of pipe-liners and they said they were not married to these men and that the men did not live there. Mrs. Hartsell was in the house at the time the arrests were made." Defendant objected to this testimony on the ground there was no allegation that the 66 rooming house was a house of prostitution. As the State had alleged that appellant procured Mary Pitts to enter a house where prostitution was allowed, it was incumbent on the State to prove that it was such a house, and this testimony was very material on that issue, as that is the house the State relied on to secure a conviction as being a house in which prostitution was encouraged and allowed. The appellant also objected to the testimony of the arrest of the two women, on the ground it was too remote. In the case of Sprague v. State, 44 S. W. Rep., 837, it was held by this court: "It was entirely competent for the court to admit evidence both of the general reputation of the house and its inmates. See Golden v. State, 34 Texas Crim. Rep., 143, 29 S. W. Rep., 779; Morris v. State, 38 Texas, 603; Sylvester v. State, 42 Texas, 496. There was no error in the court permitting testimony to be introduced as to the reputation of the house for two or three years previous to the alleged offense. The proof showed that the appellant was the owner of the house during all that time." For a similar reason the testimony of Ollie Stanley was admissible. He testified: "I am a police officer. I know the 66 rooming house. Its reputation is that of a house of prostitution. I worked on that beat about a year and a half. I know Laura Hartsell, who runs that house; her general reputation is that of a prostitute; I have seen her in rooming houses before she took that place; I have arrested women up there in that house; she knew about it."

It was not necessary for the court to define the terms "prostitution and house of ill-fame." The meaning of these words is well understood and they need no defining.

The court should not have copied the entire section defining pandering, but only that subdivision which is charged in the indictment. But as he, in submitting the case to the jury, submitted only those grounds charged in the indictment, and restricted the jury to the consideration of those grounds alone, no reversible error is presented.

The court only submitted the second count in the indictment, and as this count charged an offense, the court did not err in refusing those special instructions which requested the court to charge the jury that the first count and not the second count was submitted to them for their consideration.

As there was abundant proof of the relations existing between appellant and Mary Pitts the court did not err in refusing the charge requesting him to instruct the jury to disregard the second count in the

indictment. The proof shows that appellant and Mary Pitts were together in San Antonio; went from San Antonio to Wichita Falls together, where they remained some time; then came from Wichita Falls to Fort Worth and lived together as husband and wife, so holding themselves out. That at the several hotels and boarding houses they stopped they registered as husband and wife. That Mary Pitts during all this time was making their support by living the life of a prostitute, dividing with appellant the money she received from other men.

The court instructed the jury: "You are further instructed that you can not find the defendant guilty unless you believe from the evidence beyond a reasonable doubt that the 66 rooming house was, at the time of the commission of the alleged offense, if any, a house of prostitution, or unless you believe from the evidence beyond a reasonable doubt that the 66 rooming house was, at the time of the commission of the alleged offense, if any, a house in which prostitution was encouraged or allowed; and in case the jury has a reasonable doubt as to the facts above set out in this paragraph, it will be your duty to acquit the defendant." He further instructed the jury that the appellant must have procured Mary Pitts to enter this house. So it was unnecessary to give any of the special charges requested.

Attached to the motion for a new trial is the affidavit of Mary Pitts that she testified falsely in several particulars on the trial of the case, and if this conviction rested on her testimony we would be loath to let the conviction stand. But by other and different testimony it was proven, or at least the evidence would justify the jury in finding that this rooming house was a house in which prostitution was permitted, and by all the testimony it is shown that appellant carried Mary Pitts to this house and registered there with her as his wife. If we eliminate the testimony of Mary Pitts on the trial altogether the evidence would sustain a conviction, and as she swore one way on the trial and another on the hearing of the motion for a new trial, we feel that it should be eliminated in considering this case. But take the testimony she gives on the motion for a new trial alone, and it shows she and appellant lived together as husband and wife; that she was a prostitute, and appellant knew that fact, and that he carried her to this rooming house, and she received other men while at this rooming house.

The only other question presented by the record we deem it necessary to mention is, it is made to appear while the jury was considering the case they propounded to the court the following question:

"To the Hon. Judge of the 67th District Court: Please instruct the jury what is meant by the indeterminate sentence law.

"B. B. Getzerdiner, Foreman."

And the court, after receiving said inquiry, answered as follows:

"Under the indeterminate sentence law the court sentences a defendant to a term not less than the lowest penalty prescribel by law, and not more than the penalty prescribed by law and not more than the penalty fixed by the jury; if the convict behaves himself and makes a model

prisoner, he has a chance to be pardoned after serving the lowest term that is the substance of the law."

As the jury has nothing to do under the indeterminate sentence law, it would have been proper for the court to have so informed them, but as he gave a correct definition of the term, is it ground for reversal of the case? Had the jury assessed against appellant a very severe penalty, we would feel that perhaps this instruction might have been instrumental in causing them to do so, but they assessed against him only seven years, while the minimum term is five years, and the maximum life imprisonment. We do not feel under such circumstances that this instruction in anywise contributed to the punishment assessed.

The sole defense in this case was predicated upon the issue that the 66 rooming house was not a house of prostitution, or a place where prostitution was permitted. It is not questioned that appellant carried Mary Pitts to this house, and they stayed there. It is shown beyond question that Mary Pitts lived the life of a prostitute while at this place. The question of whether or not the house was a house where prostitution was permitted was fairly submitted to the jury, and they find it was such a house, and the judgment is affirmed.

*Affirmed.*

[Rehearing denied March 17, 1915.—Reporter.]