## Henry Baldwin v. The State.

### No. 4608. Decided October 31, 1917.

**1.—Pandering—Indictment—Words and Phrases.**

Where the indictment for pandering alleged that defendant unlawfully procured, etc., a female inmate, etc., for a house of prostitution and substantially followed the statute, the same was sufficient, and the contention about the word "of" a house of prostitution and the word "for" a house of prostitution is untenable. Following Jones v. State, 72 Texas Crim. Rep., 496, and other cases.

**2.—Same—Sufficiency of the Evidence.**

Where, upon trial of pandering, the evidence sustained the conviction under a proper charge of the court, there was no reversible error.

**3.—Same—Bills of Exception.**

Where the several bills of exception in the record were filed too late to be considered they are stricken out on motion of the State.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robert B. Seay.

Appeal from a conviction of pandering; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*E. B. Hendricks*, Assistant Attorney General, for the State.—On question of bills of exception: Demarco v. State, 178 S. W. Rep., 1024.

PRENDERGAST, Judge.—Appellant was indicted and convicted of the offense of pandering.

The indictment, after the usual allegations of the proper organization of the grand jury, alleged that appellant, on July 30, 1916, "did unlawfully procure, and was concerned in procuring, with her consent, a female inmate, towit: Agnes Yarbrough, for a house of prostitution." There were other counts of the indictment, but as this alone was submitted, it is unnecessary to state the others.

The statute prescribing this offense (art. 506a, 1 Vernon's Crim. Stats., Acts 1911, p. 29) enumerates quite a number of different acts in the alternative, all with the same penalty, prescribing how this offense may be committed. It is unnecessary to quote the whole article. We will quote the one under which this prosecution was had. It is: "Any person who shall procure, or attempt to procure, or be concerned in procuring, with or without her consent, a female inmate of a house of prostitution, . . ." shall be guilty of pandering, etc. It will be noticed that the indictment herein follows completely, in alleging the acts constituting the offense, the language of this statute. Appellant made a motion to quash this count on the ground that by a fair construction of the words used it appears that Agnes Yarbrough was

already an inmate of a house of prostitution, and that it would be impossible to procure her as an inmate for such house, and that it is at best paradoxical, and does not charge in plain and intelligible language any offense known to the law, and that in order to constitute a good pleading the State 'should have alleged by appropriate averment that defendant "procured and was concerned in procuring a female person, towit: Agnes Yarbrough, as an inmate for. a house of prosecution." None of appellant's contentions can be sustained. As stated, the averment in the indictment follows fully the language prescribing the offense, and it has been held, under this statute, that when this is the case the indictment is sufficient. Jones v. State, 72 Texas Crim. Rep., 496; Clark v. State, 76 Texas Crim. Rep., 348, and cases there cited; sec. 344, White's Ann. C. C. P., and cases there cited.

Agnes Yarbrough, a young woman, testified that in the latter part of July, 1916, she lived at Elam, out in the country, with her parents; that she had been married, but was then separated from her husband. She further testified: "I first met Mr. Baldwin when I went up there one night to his place to get a room; I just came to town to do some trading and just thought I would get a room to spend the night; I just saw where it said 'Hotel' and went up and got a room; that was the first time I had ever met the proprietor of that rooming house; this defendant is the man from whom I rented a room; I rented a room from him for the purpose of staying all night; it was about an hour after I rented the room when the defendant came and talked to me; he asked me if I didn't want to stay up there, and said I could make lots of money, and said it was a good place, and I could make good money, and I asked him how, and he says 'standing men,' and I says that was something I never did and never had done; I had never stayed with any man except my husband. Mr. Baldwin told me what to say to the men, and he would show me to the man, and then told me what to say to him and what to do, and everything about staying with them; he said not to let a man go down the steps if he offered me two dollars, and if I did' let him go down the steps he got awful mad; that was afterwards; Mr. Baldwin brought me the first man that I stayed with in that house; he brought me about four or five men that night; I stayed with each of them; by that I mean I had carnal knowledge of them; I charged them for it; they paid me two dollars apiece, and I gave the defendant a dollar; Mr. Baldwin charged me three dollars and a half a week room rent. I stayed there from the latter part of July up until some time in November, and then I got burned and went home; for every man that stayed with me from that night on I gave Mr. Baldwin a dollar." She further testified that while staying in said house and plying her vocation other women, she naming several, during said time, also came to said house and plied their vocation of prostitution, and for each man they stayed with they would give appellant a dollar each time. They had no connection with her, and came at different times from the time she was induced to stay

there.   She further swore that while there whenever she filled a date with a man she got $2 for it and paid Baldwin $1 and kept $1, "except that one time he told me to go and stay with a man for $1.25, and he took the dollar and left me the quarter." It was proven that appellant had run said house for some three years before this prosecution was begun, and that it was a rooming house or hotel over the Stag saloon in Dallas.

The State proved by Mr. Parsons, a police officer of Dallas, that he knew the general reputation of that house as a house of prostitution, and that that reputation of it was bad.

W. E. Powell testified that he knew appellant and the house he kept, and that he knew said witness, Agnes Yarbrough, and had known her for a long time; that while Agnes Yarbrough was in that house he was up there twice and talked to her, and that while he was there the second time he saw a man come in and speak to appellant and then went back and talked to Agnes, and the man then went in a room and stayed with her about thirty minutes; that when she came out she went and paid appellant some money.

Grace Rogers testified she was twenty years old, knew appellant and where his house was situated; that she went up there in March, 1916, and lived up there some time; that she left there some two or three weeks before appellant was arrested in this case; that while there she had sexual intercourse with various men, and received money therefor; that she paid part of the money to appellant and kept some of the money herself.

Neta Underwood, a young woman, testified that she knew appellant and where his place was; that she had been there many times; that he asked said witness Agnes her phone number, which she told him, and that he invited her up there, stating he had a proposition to make to her; that she went up there, and "he told me I could work for my room rent, and every time I went to a room with a man I would have to pay a dollar, and the man would pay me two dollars; I mean I would have intercourse with a man for two dollars, and then would give Mr. Baldwin one dollar; I gave that money to Mr. Baldwin."

Jewel Franklin, a young woman, testified that she knew appellant and his place, and went to his place in 1916, and "I was at his place between three and four weeks." She testified: "I had a conversation with defendant when I went there; I went there some time in November of 1916, last year; he told me to get two dollars and give him one and keep one; that was for trick money; I stayed there about three weeks, I think; when I turned a trick I gave up part of the money and kept part. I gave part to Mr. Baldwin; I gave him his part and kept my own. I did that for every trick I turned; I gave him his trick money, his part. I call this trick money—two dollars, one dollar for me and one for him; trick money is money that you get when you turn a trick with a man."

The full testimony of none of these witnesses is given because deemed unnecessary. In their further direct, cross and redirect testimony much

other evidence was given by them tending to establish the same facts where their testimony is quoted above.

Appellant and his wife both testified and denied that they kept said house as a house of prostitution, and all knowledge of the women who stayed there as plying their vocations. He also introduced several witnesses who testified to his good reputation as a peaceable, law-abiding man.

The State, in rebuttal, introduced Mr. J. J. Smith, a farmer who lived at Lancaster, in Dallas County, who testified that he knew appellant and where his place was located; that he had been there twice; that the first time he went there he got a room from appellant himself, and when he registered he asked him if there were any girls up there, and he replied the girls were out; that he went up to bed and stayed there that night. That he was there again in October or November, 1916, and said: "I stayed with a woman there then; I stayed with Agnes, who is out here in the witness room; the defendant Baldwin was in the house at that time; that was in the afternoon; I paid the woman for it." On cross-examination he testified that when he went there the second trip, in October or November, "that was the time I stayed with the woman; I went up there that time in the afternoon about two or two thirty o'clock; Mr. Baldwin was in there at that time, but I never said anything to him, but I just went on and made arrangements and told her what I wanted and we went in the room; Baldwin was up in the hall when I went in the room; Baldwin was at the head of the stairs, or something like the head of the stairs, and I walked on by him."

A. W. Mosier testified that he lived at Hutchins, in Dallas County, all his life; that he had seen appellant and knew where his place was, and had been up there; that Joe Lee Chilton, who also lives at Hutchins, went up there with him. He said: "We went up there at night; I saw Mr. Baldwin when I first got up there; we sat down there in the hall; we saw Grace, this girl out here; she was lying on the bed; I sat down there in the hall, and Grace came in the hall to where I was; then Mr. Baldwin went back to the back end; then Grace came in there; nobody else came in; no other girl came in. Yes, Agnes came in there; she came after Mr. Baldwin left; then I went to the room with Agnes; Joe Lee Chilton went out with Grace; I paid for it." On cross-examination he further swore that he saw said Chilton go in a room with a woman; that Chilton went in one room, and he, witness, went in another; that he paid the girl he went in the room with three dollars, but he did not know what she did with it.

Undoubtedly, the testimony clearly establishes appellant's guilt under the law.

The court gave some of appellant's specially requested charges, and in his main charge copied and gave substantially another or others requested by appellant. Upon the whole, the charge the court gave

was full, complete and apt, correctly laying down the law and submitting every issue that was raised by the testimony.

Appellant has several bills of exception in the record, but they were all filed too late to be considered; hence the Assistant Attorney General's motion to strike them out and not consider them must be sustained.

The case seems to have been well tried on both sides, appellant had a fair and impartial trial, and there is no reversible error presented that would authorize this court to reverse the judgment; it will, therefore, be affirmed.

*Affirmed.*