LEWIS JOHNSON v. THE STATE.

No. 4797.  Decided February 20, 1918.

</div>

**1.—Pandering—Statutes Construed—House of Prostitution.**

Where, upon trial of the offense of attempting to procure a certain female to become an inmate of a house of prostitution and to remain therein, etc., the evidence did not show that the alleged female was induced to enter a house of prostitution or ill-fame, which was the element of the offense as charged in the indictment, the conviction could not be sustained, although the said female may have plied her vocation as a prostitute with the knowledge and aid of defendant in some place not a house of prostitution or ill-fame; and, although the defendant may have been guilty of another offense,, he could not be convicted under this indictment under article 506a, Penal Code.

**2.—Same—Charge of Court—House of Prostitution—Definition.**

Where the evidence raised the issue as to whether the places in which said female plied her vocation was a house of prostitution, the court should have defined in his charge such house. Following Hewitt v. State, 71 Texas Crim. Rep., 243. Distinguishing Clark v. State, 76 Texas Crim. Rep., 348.

Appeal from the District Court of Eastland. Tried below before the Hon. Joe Burkett.

Appeal from a conviction of pandering; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

E. B. Hendricks, Assistant Attorney General, for the State.

MORROW, JUDGE.—The conviction was for pandering and the punishment fixed at ten years confinement in the State penitentiary.

The Assistant Attorney General, in his brief, has subdivided the provisions of the statute, article 506a, giving to each subdivision a number, as follows:

"1. Any person who shall procure or attempt to procure or be concerned in procuring, with or without her consent, a female inmate for a *house of prostitution*.

"2. Or who, by promises, threats, violence or by any device or scheme, shall cause, persuade or encourage a female to become an inmate of a *house of prostitution*.

"3. Or shall procure a place as inmate in a *house of prostitution* for a female person.

"4. Or any person who shall, by promises, threats, violence or by any device or scheme, cause, induce, persuade or encourage an inmate of a *house of prostitution* to remain therein as such inmate.

"5. Or any person who shall, by fraud or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority, procure any female person to become or remain an inmate of a *house of ill-fame*, or to enter any place in which prostitution is encouraged or allowed in this State.

"6. Or to come into this State or leave this State for the purpose of prostitution, or who shall procure any female person to become an inmate of a *house of ill-fame* within this State.

"7. Or to come into this State or to leave this State for the purpose of prostitution.

"8. Or who shall give or agree to receive or give any money or thing of value for procuring, or attempting to procure any female person to become an inmate of a *house of ill-fame* within this State.

"9. Or to come into this State or leave this State for the purpose of prostitution, shall be guilty of pandering, and upon conviction for any offense under this Act, shall be deemed guilty of a felony and shall be punished by confinement in the penitentiary for any term of years, not less than five."

All of these subdivisions of the statute, except subdivisions 6, 7 and 9 which relate to coming into or going out of the State, make an element of the offense the entry of a house of prostitution or remaining in a house of prostitution. Subdivision 5 as numbered above uses the term "house of ill-fame," and also the term "to enter any place in which prostitution is encouraged or allowed."

The evidence in the case shows that Lucile Warren was a common prostitute and that appellant accompanied her or followed her to various places; that he had sexual intercourse with her in a hotel in Fort Worth and at Gorman, and that he was cognizant of and probably interested in her plying her vocation as a common prostitute, but the place at which the proof shows it to have been done with his knowledge was not at a house of prostitution or ill-fame. They stopped at a hotel

in Gorman and the woman, on her own initiative, as she says, made arrangements with a man to go out in the woods in a buggy and have sexual intercourse, and that appellant and a number of others followed them on foot, and that while appellant was present in the party she did have sexual intercourse with a number of these men. There is no indication from the evidence that the hotel at Gorman was a house of ill-fame or a house of prostitution. The conviction appears to be based upon the idea that the transaction at Gorman and possibly the same kind of transaction at Cisco, in which the prostitute, with the knowledge and aid of appellant, plied her vocation, at a place out in the woods and in a pasture, neither of which was shown to be a house of prostitution, tent or any kind of attempted enclosure, but simply in the open country sheltered by the. darkness, was a violation of the terms of the Act touching the entry of a "place" in which prostitution is encouraged.

The use of the word "place" in the first paragraph of the court's charge suggests the idea that such was the view of the trial court. The indictment, it occurs to us, should have been under article 498 of the statute which makes it a penal offense to procure a female for the purpose of having sexual intercourse with any male, the words being as follows: "It shall be unlawful for any person to invite, solicit, procure, allure or use any means for the purpose of alluring any female to visit and be at any particular house, room, or place for the purpose of meeting and having unlawful sexual intercourse with a male person." There is no evidence of fraud, duress or abuse of position of confidence or authority.

At all events, we do not think the evidence supports the necessary element of the prosecution charging appellant's acts to have been in connection with bringing or keeping of the female named in a "house of prostitution." There is evidence that he went with her to a house of a man in Cisco with whom neither of them were acquainted, her mission being, as we understand it, to get work in connection with a restaurant or work of some kind. She stayed at the house mentioned for a day or two and subsequently returned there on her own accord, and on one of the occasions she had intercourse with the owner of the house, so far as evident, without any arrangement or knowledge on the part of. appellant. She also says that she had sexual intercourse with a man in the hotel at which she stopped, but this was when she had gone there without appellant accompanying her.

That the evidence raised an issue as to either of these houses being a house of prostitution is doubtful. If, however, it did raise such issue or the evidence does upon another trial, the special charges requested by appellant or similar special charges defining a house of prostitution should be given.

It has been held that where the evidence is undisputed that a certain house is a house of prostitution and the issue in the case is not the character of the house but the acts of the accused with reference to it,

that no instruction defining a house of prostitution is necessary. Clark v. State, 76 Texas Crim. Rep., 348, 174 S. W. Rep., 354. In this case, however, there is no exclusive proof that either of the houses mentioned were houses of prostitution or where prostitution was encouraged or allowed within the meaning of the law, under which circumstances the charges mentioned were necessary. Hewitt v. State, 71 Texas Crim. Rep., 243.

The judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*