## Joel Dean Threlkeld v. State

No. 28,669. May 22, 1957.
Appellant's Motion for Rehearing Overruled
June 26, 1957.

*E. Colley Sullivan,* by *Stanley Traweek,* Dallas, for appellant.

*Henry Wade,* Criminal District Attorney, *Homer Montgomery* and *George P. Blackburn,* Assistants Criminal District Attorney, Dallas, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

Our prior opinion is withdrawn.

The offense is pandering; the punishment, 20 years.

The indictment alleged that appellant did unlawfully, by means of an agreement of compensation, procure and attempt to procure, and was concerned in procuring the named female with her consent, as an inmate of and for a house of prostitution, the same kept for prostitution and where prostitutes were permitted to and did resort and reside for the purpose of plying their vocation.

The court, in his charge, defined a "house of prostitution" as meaning a house or place kept for prostitution or where prostitutes are permitted to resort or reside for the purpose of plying their vocation.

The state opened its case with the testimony of two police officers of Dallas who were assigned to duty as detectives and members of the Special Service Bureau or "Vice Squad."

Detective Comminskey testified that the Martin Hotel was a place where "prostitutes resort and reside for plying their vocation;" that to his knowledge it was a house of prostitution, which he understood to be "where girls are called to or reside there for purposes of prostitution;" that he had personally arrested well known prostitutes there, two of whom he named, and testified that they were offering themselves as prostitutes for pay at the Martin Hotel.

This witness further testified that he knew of the Lawrence Hotel being a house of prostitution, though he had not personally made arrests there, and, when asked if he knew of the Dallas Hotel being a house of prostitution, answered, "There have been arrests there, yes."

Officer Gilmore, also of the Vice Squad, testified that the reputation of the Martin Hotel was that it was a place where prostitutes resort to and sometimes reside for the purpose of plying their vocation of prostitution; that on September 24, 1955, he "made a case there" and had heard of numerous other arrests for prostitution being made there. He was not cross-examined.

The girl named in the indictment testified that she was 17 years of age at the time of the trial (February 16, 1956) and that before she first came to Dallas about April 20, 1955, she lived with her parents in a South Texas town.

She testified that when she came to Dallas in August she checked into the Dallas Hotel under an assumed name, with the prefix "Mrs.;" that appellant, a bellhop, stayed with her that night and proposed that she work for him as a prostitute, and she agreed.

The next morning, according to the girl's testimony, appellant "checked me out and put me into the Lawrence Hotel," which was next door to the Dallas Hotel, "to work as a pros-

titute," which was the agreement between them, and she worked as a prostitute and had sexual intercourse with three men for money in her room that night, and that appellant arranged for these men to come to her room.

The next morning, appellant "came and got me and we checked into the Texas Hotel as man and wife," and she worked there as a "call girl" for the Dallas and Lawrence Hotels, appellant taking "the majority" of the money from her. The record shows the following:

"Q. Was there an agreement that he would take most of the money and that he would leave you with about six dollars and he paid the room rent? A. Yes."

She testified that she then moved into the Martin Hotel, where she worked as a prostitute, appellant being responsible for the move.

She had seven or eight "dates," which she testified meant sexual intercourse with men for money, and each day appellant took most of the money, as per their agreement. She then went back to the Texas Hotel for a time, and thereafter returned to the Martin Hotel, where she stayed from September 18th to 24th.

"Q. Was there an arrangement between Joel Threlkeld *and the people there* to send these men to you? A. Yes."

The girl further testified that on one occasion a man came up and wanted a "half and half" date and she refused; that the man went back to the lobby; that thereafter appellant and the man came back to her room, and when she again refused to perform the act of sodomy with her mouth appellant threatened her, and she did. Twice during her stay at the Texas Hotel, appellant beat her about the face and threatened her.

Another police officer, T. M. Henson, Jr., testified that on September 24, 1955, he was called to a cathedral, where he talked to the girl and then went and arrested the appellant, who worked at the Texas Hotel, "and when I walked in he ran out of the hotel and went down Houston Street and I caught him in the lobby of the Lawrence Hotel; when I caught him it looked like he was trying to get under a desk in the lobby." The arrest was made the same day the officer talked to the girl.

The appellant did not testify or offer any evidence in his own behalf.

Appellant's contention that the girl did not stay long enough in one place to become an inmate and the fact that the evidence disclosed that the appellant caused the girl to ply her trade at several hotels would not defeat the state's case, which was made when it was shown that he did cause her to go to the Martin Hotel, where she stayed on two occasions, during which stay there was "an arrangement between Joel Threlkeld and the people there to send these men to you" and where she had prostitution "dates," together with the proof that the Martin Hotel bore the reputation of being a house of prostitution.

We find no merit in the appellant's contention that the court erred in permitting the girl to testify about the act of sodomy which the appellant forced her to commit on one of the customers he had sent to her room. The "half and half" date about which she testified was a direct consequence of the criminal act of pandering with which the appellant was charged and was therefore admissible.

Appellant's contention that the girl is an accomplice and hence the evidence is insufficient to support the conviction because of the insufficiency of the corroboration of her testimony presents the only serious question in the case. A state of confusion appeared to have existed on this question until the rendition of the opinion by this court in Porter v. State, 141 Texas Cr. Rep. 417, 148 S.W. 2d 202. The prior holdings were reviewed, some were overruled, and the rule announced that if the evidence shows that the woman involved originates the enterprise she is an accomplice; but if, on the other hand, the accused approaches the woman and induces her to partake in the criminal enterprise, then the offense is committed when the solicitation is made, and the woman is not an accomplice.

The same rule has been given application in procuring cases in Mann v. State, 151 Texas Cr. Rep. 205, 205 S.W. 2d 985.

The record here is clear that the appellant solicited the girl and initiated the criminal enterprise which, according to the holdings in the cases cited, constitutes the offense, and, even though other violations of the law may follow as a consequence of the negotiations, they do not relate back and make her a party to the original offense of pandering.

Finding no reversible error, the judgment of the trial court is affirmed.

DAVIDSON, Judge, dissenting.

The crime of pandering is denounced by Art. 519, P.C. In Johnson v. State, 83 Texas Cr. Rep. 64, 201 S.W. 990, there are nine different fact situations any one of which constitutes that crime. Each of those fact situations, save and except those which have reference to bringing prostitutes into the state, requires as an essential element thereof proof of the existence of a house of prostitution or house of ill-fame. It follows, then, that the offense of pandering rests, first, upon proof showing the existence of a house of prostitution. Without proof of that fact, the crime of pandering does not exist.

This conviction was brought and maintained under that part of Art. 519, P.C., which reads as follows:

"Any person who shall procure or attempt to procure or be concerned in procuring, with or without her consent, a female inmate for a house of prostitution * * * shall be confined in the penitentiary for any term of years not less than five."

Such unlawful act was set forth as (1) in the Johnson case.

It is also alleged in the instant case that the female consented to become an inmate of a house of prostitution under agreement with the appellant that she was to receive some character of compensation therefor.

The offense of pandering is complete when the female becomes an inmate of a house of prostitution at the procurement of the accused. Hewitt v. State, 71 Texas Cr. Rep. 243, 158 S.W. 1120.

The term "inmate" is given no special definition in the statute, so it is to be taken in the sense usually understood—which is that it is synonymous with "inhabitant," one who shares a house or apartment with another.

The alleged female, Billie Jo Ann Cook, testified that she was seventeen years of age when she came to Dallas in April of 1955. She registered under an assumed name, as Mrs. Jerry Warren, into the Dallas Hotel. Appellant was a bellhop at the hotel and spent the night with her in her room. During the night, at appellant's suggestion, she agreed to become a prostitute and work for him, as such, and receive as compensation a part of the proceeds derived from the unlawful enterprise. The fol-

lowing day the witness moved, and checked into the Lawrence Hotel next door to the Dallas Hotel.

The purpose of the move was to engage in acts of prostitution, which she did, appellant arranging the dates for her.

The next day appellant and the witness checked into the Texas Hotel, registering as husband and wife. From that hotel the witness worked as a call girl for both the Dallas and Lawrence Hotels.

From the Texas Hotel the witness moved into the Martin Hotel, where she worked as a prostitute. She did not say that appellant secured the dates for the acts of prostitution at the Martin Hotel. She testified that he did demand and received a part of the proceeds she received for such acts, in keeping with their agreement.

From the Martin Hotel witness moved back to the Texas Hotel, and from the Texas Hotel back to the Martin Hotel.

The date of this last move to the Martin Hotel was fixed as the 18th day of September, 1955. The date of the alleged offense was fixed as September 20, 1955. As to that date, the witness testified that a man whom she did not otherwise identify came to her room and proposed a date for sexual intercourse. The witness refused, and the man left. Later, the appellant came to her room and threatened her if she did not have the date with the man, who had returned to the room. The witness did not testify as to the nature of the threat.

Four days later the witness went to a priest, who, after talking with her, called the police. She then made a statement to the police officer at the church to which she had gone. At no time did the witness say that appellant engaged or paid for her room at the Martin Hotel.

It is upon proof relative to acts engaged in at the Martin Hotel that this conviction rests.

Does this testimony show that the Martin Hotel was a house of prostitution and that the witness was an inmate of that hotel, as a house of prostitution?

It becomes material to know what a house of prostitution is. Here is the definition the trial court gave in his charge to the jury:

"By a 'House of Prostitution,' as used in this charge is meant a house or place kept for prostitution or where prostitutes are permitted to resort or reside for the purpose of plying their vocation."

Such is the definition prescribed by Art. 510, P.C.

There are two necessary elements contained in that definition: The house must be "kept" for prostitution, or it must be a house where prostitutes are "permitted" to resort or reside for the purpose of prostitution. Without the existence of these two essentials there can be no house of prostitution.

In order for a house to be "kept," there must be a keeper; there must be someone in charge or control of a house for it to be "kept." Such is true of the use of the word "permitted," with reference to permitting a house to be used for prostitution. Unless and until there is someone with authority to permit the use of the house, no permission could be obtained—all of which facts lead to but one ultimate conclusion, that being that in order for the offense of pandering to exist it must be shown that some person in control of the house kept or permitted it to be used for the purpose of prostitution.

There is not a line of testimony in this case suggesting that the appellant was the keeper or had anything to do with the Martin Hotel management or that he had any control thereof or had any connection with the keeping thereof or the granting of permission for its use by others.

The case was tried upon the erroneous and fallacious theory that the offense of pandering was shown by the fact that the prostitute resorted to and plied her vocation in the Martin Hotel and that appellant aided and assisted her in so doing.

As evidence that such was the theory of the state and that upon which this case was tried, one of the state's witnesses, a member of the Dallas police department, was asked, after his testimony that the Martin Hotel had the reputation of being a house of prostitution, what he meant by "a house of prostitution." The witness replied: "A house of prostitution or bawdy house is where girls are called to or reside there for the purpose of prostitution."

Upon the basis of that definition, the witness testified that the Martin Hotel was a house of prostitution, within his own

knowledge, because in 1952, three years prior to the date of this prosecution, a prostitute admitted after her arrest that she was at the hotel for the purpose of offering herself for prostitution, and in 1955, another prostitute was arrested there who was offering herself for prostitution. No conviction appears to have resulted in either case.

The error in the definition of a "house of prostitution," as used and employed by the witness, is apparent, because he did not include therein the element of purpose for which a house is kept or permitted to be used in order to be a house of prostitution (Art. 510, P. C.).

Proof, merely, that prostitutes engage in acts of prostitution in a hotel or house does not condemn that hotel or house as a house of prostitution. In some manner that fact must be brought to the knowledge of the owner or operator of the hotel or house, in order to show that it was kept or permitted to be used as such. The facts, here, do not suggest that the Martin Hotel was such a house.

It must be remembered that proof, merely, that a house has the reputation of being a house of prostitution is not sufficient to show that it is, in fact, such a house. Johnson v. State, 102 Texas Cr. Rep. 409, 278 S.W. 210; Crowell v. State, 147 Texas Cr. Rep. 299, 180 S.W. 2d 343; Williamson v. State, 156 Texas Cr. Rep. 520, 244 S.W. 2d 202; Gibson v. State, 144 Texas Cr. Rep. 263, 162 S.W. 2d 703.

It is apparent, from what has been said, that the evidence is insufficient to show that the Martin Hotel was a house of prostitution within the meaning of the pandering or bawdy house statute. Without proof that the hotel was such a house, this conviction should not stand.

But, to my mind, the facts are insufficient to support the conviction for yet another reason, and that is that the facts show the offense of procuring, as defined by Art. 525, P.C.

Under that statute it is unlawful for one to solicit or procure a female to visit or be in any room or place for the purpose of having unlawful sexual intercourse with any male person. Note is taken of the fact that under that statute the room or place where the unlawful act of intercourse was to be accomplished is not material nor an element of the offense. The offense there denounced consists in the procuring and solicitation of the

female to engage in the unlawful act, and it is complete with the solicitation.

No occasion exists to re-state the facts upon which this prosecution rests. It is sufficient to say that they show the crime of procuring by the appellant, and nothing more.

In Johnson v. State, 83 Texas Cr. Rep. 64, 201 S.W. 990, we have an almost exact fact situation as that here presented: In that case it was held that the facts showed procuring, and not pandering. One of the reasons for that conclusion was that the evidence failed to show that the hotel or other place where the acts of intercourse occurred was a house of prostitution.

Under the facts presented in the instant case, the affirmance thereof destroys both the procuring statute (Art. 525 P.C.) and the pandering statute (Art. 519) because it is held thereby that the same fact situations authorize a conviction under each statute, while each statute prescribes a different punishment for a violation thereof.

The two statutes, pandering and procuring, ought not to be thus condemned. They cover entirely separate and distinct fact situations.

There remains one final reason why the facts in the instant case are insufficient to support the conviction: It is the failure to corroborate the prosecuting witness Billie Jo Ann Cook, who was an accomplice witness by and under the allegations of the indictment and also because of her own testimony.

Over a long period of time it was the consistent holding of this court that the prostitute in a pandering case was an accomplice witness. As supporting that holding, reference is had to Muse v. State, 94 Texas Cr. Rep. 71, 249 S.W. 861; Kelley v. State, 107 Texas Cr. Rep. 254, 296 S.W. 531; Newton v. State, 126 Texas Cr. Rep. 482, 72 S.W. 2d 1089. Those were cases where the prosecution was for pandering and not for procuring.

In Porter v. State, 141 Texas Cr. Rep. 417, 148 S.W. 2d 202, this court overruled the cases cited and the rule there announced and held, in lieu thereof, that the female in a pandering case was an accomplice witness only when she, herself, originated the criminal enterprise. The holding in the Porter case was followed in Mann v. State, 151 Texas Cr. Rep. 205, 205 S.W. 2d 985.

The holding in the Porter case is, in my opinion, wrong and based upon a premise not applicable in pandering cases.

It will be noted that the Porter case is founded upon the cases of Denman v. State, 77 Texas Cr. Rep. 256, 178 S.W. 332; Deatherage v. State, 91 Texas Cr. Rep. 181, 237 S.W. 1111; and Miller v. State, 107 Texas Cr. Rep. 594, 298 S.W. 593. The Denman and Deatherage cases were not cases of pandering; to the contrary, they were convictions for procuring, an entirely different offense from that of pandering and not based upon or involving that crime.

I am of the opinion that the holding prior to the Porter case was correct and that the Porter case should be overruled. At least that case and the rule there announced should be restricted in application to those cases where the female, by her acts and conduct, does not make herself an accomplice to the unlawful act by being a co-conspirator, principal, or accomplice under the law relating thereto.

I cannot believe that the holding in the Porter case was intended to render inapplicable the law of principal and accomplice as applied to the female in a pandering case. To the contrary, the female may be so connected with the offense and her participation therein such as to make her an accomplice witness, under the general law.

In support of the contention that the female, here, is an accomplice to the crime of pandering charged, because of her active participation in the joint crime, I call attention to the fact that the indictment alleges not only that she consented to become an inmate of a house of prostitution but that she did so because she was going to be paid or receive compensation for so doing and agreed thereto. Such allegation makes the female a party to the offense in that she consented and agreed to the commission thereof as a joint enterprise between her and the appellant—each to participate in the fruits of that joint enterprise and unlawful act.

There is no rule of law more firmly fixed than that which says that "All persons are principals who are guilty of acting together in the commission of an offense." Art. 65, P.C.

The allegations of the indictment bring this case squarely within that statute, because the female consented to be a party to the crime of pandering, to enter therein as a joint under-

taking and enterprise with the appellant, and to participate in the consummation of the unlawful act for pay.

When the testimony of the female is looked to in support of the allegations of the indictment, it is found that by her own admissions she became a party to the crime of pandering when she voluntarily consented and entered into the consummation of that crime as the prostitute and was to participate in the proceeds derived from the unlawful enterprise. Under her own testimony the female was an accomplice witness, because she was a co-conspirator and co-principal to the crime which she says was thereafter committed. In support of that conclusion, see Denman v. State, supra; Dooms v. State, 77 Texas Cr. Rep. 206, 178 S.W. 334; Thompson v. State, 125 Texas Cr. Rep. 28, 66 S.W. 2d 328; Farris v. State, 74 Texas Cr. Rep. 607, 170 S.W. 310.

There being no testimony corroborating the accomplice witness Cook, it is my opinion that the evidence is insufficient to support the conviction.

In his motion for a new trial, appellant claimed that he was first apprised, when the case was submitted to the jury, of the fact that the state would rely for a conviction upon the theory that the Martin Hotel was a house of prostitution. There was nothing in the indictment to indicate that the state would rely upon that theory. By reason of that fact, appellant claimed surprise and urged that had he been advised prior to trial that such was the state's contention he could have produced abundant evidence at the trial to show that the Martin Hotel was not a house of prostitution but a legitimate hotel, operated and conducted as such.

In view of those allegations, the trial court permitted appellant to introduce evidence in support of that contention.

Such testimony shows the following:

The Martin Hotel was a three-story structure of fifty-four rooms, owned and operated by Moose Martin as a commercial hotel and located at 2013 Main Street in the city of Dallas across the street from the city hall and police department of that city. A coffee shop was operated on the first floor in connection with and as a part of the hotel. The chief of police and other members of the police department were customers of and patronized the coffee shop. At the time of the alleged offense there were thirty permanent guests living at the hotel.

The witness Ashby, eighty-one years of age, had been a permanent resident of the hotel for over three years and had never heard the Martin Hotel referred to as a bawdy house or house of prostitution. He had no knowledge of prostitutes residing in or practicing prostitution in the hotel.

The witness Singer had resided in Dallas for fifty-two years and in the Martin Hotel for five years. He testified that he had never heard the Martin Hotel referred to as a house of prostitution or bawdy house. He gave the names of two women "in their sixties" who had resided in the Martin Hotel for a period of five years. He knew of no prostitutes having been in or arrested in the hotel.

The testimony of those witnesses and the facts above stated were not challenged or denied by the state.

So a legitimate hotel, operated and conducted as such in the city of Dallas, where some thirty permanent guests resided and made their home and which was patronized by the public, generally, was condemned and adjudicated by this conviction to be a house of prostitution—that is, a house "kept for prostitution and where prostitutes were then and there permitted to and did resort and reside for the purpose of plying their vocation."

What a shock it must have been to that eighty-one-year-old man and those two women "in their sixties" who lived, resided, and made their home at the Martin Hotel to know that they had been living in a bawdy house or house of prostitution. But the shock to those resident of the Martin Hotel can hardly be compared with that which the owner of the hotel must have experienced when he found out that his hotel had been judicially determined to be a house "kept for prostitution" or a house where prostitutes were "permitted to resort and reside for the purpose of plying their vocation," and his property, business, and reputation destroyed thereby—all without one line of evidence showing, indicating, or intimating that the owner of the hotel, or any person for or in his behalf, kept and conducted the hotel as a house of prostitution.

If the facts in this case be sufficient to convict this appellant of procuring a female to be an inmate of a house of prostitution, as the majority opinion holds, then the same facts would be sufficient to convict the owner, operator, or person in charge of the Martin Hotel, for keeping a house of prostitution, under the provisions of Art. 510, P.C.

If the facts are not sufficient to convict the owner, operator, or some person in charge of the Martin Hotel for keeping it as a house of prostitution, then the evidence is insufficient to sustain this conviction, for there is not a line of testimony in this case which indicates or suggests that appellant was the keeper of the Martin Hotel or had anything to do with the operation thereof—all of which leads me to again call attention to the fact that there can be no house of prostitution without a keeper or some person in charge who has authority to permit prostitutes to resort or reside there for the purpose of plying their vocation of prostitution.

The above facts show that the owner, and presumably the operator of the Martin Hotel kept and conducted it as a legitimate hotel and at no time as a house of prostitution.

An irreparable injury has been done to the owner of the Martin Hotel by decreeing it to be a house of prostitution without his having been accorded the opportunity of a hearing or to defend against such accusation.

Unless the Martin Hotel was a house of prostitution on September 20, 1955, this appellant is not and cannot be guilty of the offense of pandering. In holding him to be guilty thereof, the Martin Hotel is thereby adjudged to have been a house of prostitution on that date.

If the Martin Hotel was a house of prostitution and therefore not a legitimate hotel, as my brethren hold, it is indeed difficult to understand why the law-enforcing agencies of Dallas permitted it to be kept, as such, without any effort being made to prosecute the owner or operator of the hotel or to close it as a house of prostitution or bawdy house if such it was.

The fact that no such prosecution or proceeding has been instituted is one of the strongest circumstances of which I can conceive that the Martin Hotel is not and never has been a house of prostitution.

The facts presented here show appellant guilty of the offense of procuring. It is for that offense he should be tried and convicted. The facts do not show him to be guilty of pandering. To so hold destroys both the procuring and the pandering statutes.

I respectfully dissent.

ON APPELLANT'S MOTION FOR REHEARING

WOODLEY, Judge.

Appellant's counsel argues that the evidence shows that Jo Ann Cook "engineered or procured the solicitation extended her to go to work as a prostitute for appellant." It is pointed out that she went voluntarily to the hotel where appellant was employed, registered under an assumed name, and spent the night having sexual relations with appellant without charge.

Upon these facts we are asked to distinguish this case from Porter v. State, 141 Texas Cr. Rep. 417, 148 S.W. 2d 202, and hold as a matter of law that Jo Ann Cook was an accomplice witness. This we cannot do.

It must be remembered that we are not called upon to decide whether the evidence entitled appellant to a charge submitting the issue of Jo Ann Cook being an accomplice witness for no such charge was requested, and there were no objections to the charge because of its omission.

The majority remain convinced that the evidence is sufficient to sustain the conviction.

Appellant's motion for rehearing is overruled.